COLEMAN, RAY & COMPANY *v.* JONES.

The evidence warranted the verdict, and there was no error in refusing a new trial.        *Judgment affirmed.*

June 17, 1892.

Evidence. Verdict. Before Judge JENKINS. Jones superior court. October term, 1891.

On December 6, 1889, Coleman, Ray & Company brought suit by attachment against A. S. Jones for $591.50, the ground of attachment being that Jones was about to remove without the limits of the county. The suit was based on a note for $300, signed by A. S. Jones, payable to the plaintiffs, dated January 18, 1889, and due November 15th after date; a draft of the same date for $167.50, payable on the first of November after date,

drawn by A. S. Jones; and a note for $124, signed by A. S. Jones, payable to the plaintiffs, dated February 19, 1889, and due November 1st after date. Each of these instruments contains a statement that in consideration of the above advance, the maker agrees to bring his crop of cotton of 1889 to the plaintiffs for storage and sale. Each stipulates for interest at eight per cent. from maturity, and all cost of collection, including ten per cent. attorneys' fees. The jury found for the plaintiffs $166 principal, $13.90 interest, and $18.04 attorneys' fees. The plaintiffs moved for a new trial on the grounds that the verdict was contrary to law and evidence. The evidence is as follows:

Robert Coleman, one of the plaintiffs, testified: We are warehousemen, commission and grocery merchants. On December 6, 1889, defendant was indebted to us the draft and notes sued on, and an additional note for $30. The one for $124 consideration was guano sold defendant; the consideration of $300 note was supplies sold him; the draft for $167.50 was accommodation acceptance, discounted by defendant at First National Bank; we paid it at maturity without having found [funds?] in our hands of defendant. Defendant promised to send us thirty bales of cotton for our acceptance, and if he failed to do so, to pay us as commission thereon $1.00 per bale. This was the consideration of the $30 note. No cotton was sent us. On December 7th or 8th, 1889, defendant's brother, J. W. Jones, came to our warehouse with a pair of mules and a wagon, and told us A. S. Jones had left the State and directed him to deliver us said wagon and mules; that there were some other articles at his house he was instructed to deliver, we must send for. Nothing was said as to the value of the property, or at what price it was to be credited on defendant's indebtedness. As soon after as possible, we had them appraised. The mules were old and in bad

condition, and were appraised at $75 apiece; the wagon was nearly worn out and was appraised at $15; and defendant was given credit at this appraisement. We afterwards sold the wagon at $10; it was all we could get for it. Do not remember any harness. We did not work the mules at all, but tried to fatten them and put them in condition to work. We kept one until February, when he was sold to E. W. Mathew for $100, payable October 1, 1890. The other was sold in March or April to B. H. Ray for $100. We requested Mr. Dave Norris to get the other articles that were left at defendant's house, and dispose of them for us. He got an old one-horse wagon and one old two-horse wagon, both of which were sold for $16, due in October of 1890, and when paid, defendant will be given credit therefor.

R. V. Hardeman testified: On Monday, December 6th, 1889, Birch, of plaintiffs, came down on Monday's train about 8 A. M., and turned these papers over to me for collection, and I had attachment issued and levied that day. (December 6th, 1889, was Friday.)

J. W. Jones testified: On Thursday, December 5th or 6th, by direction of defendant I carried and delivered to plaintiffs two mules and a wagon and harness, and told them there were two other wagons at defendant's, all of which was the property covered by their mortgage; that I then delivered to them; I told them that they had better get them all out of the way as quickly as possible, as Mrs. Jones was after them. I turned the mules in plaintiffs' lot by their direction. No price was agreed on, or anything said about what price plaintiffs were to take this property upon their debt. The gray mule was eight or nine years of age, and worth $175 ; the other mule six or seven years old, and worth $150 ; the wagon and harness $50 ; the two wagons at home were worth $50. I purchased the balance of defendant's property. It consisted of a stock of goods, merchandise,

and some notes and accounts. These goods were hauled from defendant's store at Fortville to my store at Gray's station, Wednesday night and Thursday morning an hour by sun-up. When I reached home Friday evening, I found my store locked up by the sheriff under this attachment sued out by plaintiffs against defendant, and I have brought a damage suit against plaintiffs for that levy. I drove the mules to Macon the day I delivered them, carried a bale of cotton of my own and one of defendant's; but I had an interest in it, he owed me $40 out of it. I am not obliged to tell where defendant is; have seen him at his home since I saw him in Alabama; he was here to see me also since he left.

The testimony of four other witnesses was, in brief, that the gray mule turned over to the plaintiffs by defendant was worth $175; the other mule was worth about $150; the wagon and harness, $50; the two wagons left at defendant's, $50. The levy of attachment was on Friday afternoon from three to four o'clock. J. W. Jones was not present. One witness testified that he was a clerk of A. S. Jones, and that he saw defendant pay plaintiffs' agent over $100 in the fall of that year. Another witness testified that he drove the mules and wagon to Macon the day before, and when he got home that night, by direction of defendant he turned them over to Bryant to haul the goods from Hille to J. W. Jones' store; he went along but did not help to load or unload, and so does not know what was carried.

HARDEMAN, DAVIS & TURNER, by brief, for plaintiffs.
No appearance for defendant.