## COLUMBUS MUTUAL LIFE INSURANCE COMPANY
### *v.* GULLATT, tax-assessor, *et al.*
## GUARDIAN LIFE INSURANCE COMPANY OF AMERICA
### *v.* GULLATT, tax-assessor, *et al.*

Nos. 13108, 13115. MARCH 13, 1940.

*Bryan, Middlebrooks & Carter, Grover Middlebrooks, William H. Mewbourne,* and *Haas, Gambrell & Gardner,* for plaintiffs.

*Spalding, Sibley, Troutman & Brock, E. Harold Sheats, W. S. Northcutt,* and *Standish Thompson,* for defendants.

FORTSON, Judge. These two cases present for determination questions relating to the situs for taxation of intangible property of non-residents; and whether a petition in equity may be brought by the owner of unreturned intangible property to contest its taxability, when a county board of tax-assessors is preparing to assess it for taxation.

The Columbus Mutual Life Insurance Company and the Guardian Life Insurance Company of America, each brought an equitable petition in Fulton superior court against the members of the Fulton County board of tax-assessors, the attorney for the board, and the tax-receiver of Fulton County, alleging, that the board and its attorney have demanded of the plaintiffs that they return for taxation all promissory notes secured by real estate in Fulton County, held by the plaintiffs during the years 1931 to 1937, inclusive, which the plaintiffs contend are not taxable in Georgia; that the board of assessors and its attorney have notified the plaintiffs that unless the plaintiffs make the returns demanded, the board will assess the notes and enter the assessments upon the county tax-digest at a specified time; that each plaintiff is a non-resident corporation owning promissory notes secured by loan deeds on real estate in Fulton County, setting forth in detail how the notes had been acquired and handled, asserting that the notes and deeds are held at the respective home offices of the plaintiffs outside of the State of Georgia; and that neither of the plaintiffs has at any time carried on any loan business in Georgia which would give a local situs to any of the notes. The Guardian Company alleges that while it has lent money secured by Georgia real estate, its only business in this State is life insurance. The Columbus Company alleges that it has never done any business of any character in Georgia, and bought its promissory notes in question from the payee of the notes who is a resident of Georgia. Both plaintiffs allege that they are entitled to proceed in a court of equity, because the provision for arbitration (Code, § 92-6912), contained in the law under which the board of tax-assessors are proceeding, affords no method by which a taxpayer can contest the taxability of property assessed by a county board; and that, due to the fact that there is so much confusion, doubt, and uncertainty in the tax laws of

Georgia, the plaintiffs would be called on to bring separate actions to cancel and nullify each year's assessments if they should be made for each of the seven years, as threatened, thus causing a multiplicity of suits.

The plaintiffs further allege, that the law under which the defendants are proceeding (Code, §§ 92-6910, 92-6911, 92-6913, as amended by act of 1937, Georgia Laws 1937, pp. 517-524), violates the due-process clauses of the State and Federal constitutions, for the reason that there is no provision in the law for notice to the taxpayer before assessment is made and penalty added, or, except as to the current year, for any notice to the taxpayer after assessment is made, thus depriving him of an opportunity to be heard as to the correctness and fairness of the assessment; that the due-process clauses are violated because the section relating to arbitration (92-6912) provides that the county commissioners, who name the board of tax-assessors, fix the tax rate, and have charge of the county's fiscal affairs, are permitted to name the third arbitrator in the event the arbitrators named by the taxpayer and the assessors fail to agree upon a third, thus giving the taxing authority two arbitrators to the taxpayer's one; that during each of the years 1931 to 1937, inclusive, they made returns of all property they owned in Fulton County, including valuable real estate, and paid all taxes due on that property; that if the defendants are permitted to assess the notes in question and enter the assessments on the tax books, such action would place a cloud on the title of the plaintiff's real estate; that neither of the plaintiffs has ever established a commercial domicile in Georgia; that, before the time when the assessments in these cases were threatened, the interpretation of our laws by all of the tax-collecting authorities in the State has been that mortgage notes owned by non-residents are not taxable in Georgia. The plaintiffs attack the law under which the county board of assessors is proceeding, as violating the due-process clauses, on the ground that the section relating to arbitration (92-6912) does not give the arbitrators the power to compel the attendance of witnesses, to administer oaths to witnesses, or to compel the production of documents; and therefore that the arbitrators would not constitute an adequate tribunal to pass on the legal rights of the plaintiffs, especially as to the question of *taxability* of the notes in question.

Upon presentation of these petitions the judge granted orders temporarily restraining the defendants from making the assessments. Afterward the Columbus Company amended its petition by alleging that after the board of tax-assessors was notified of the restraining orders they nevertheless did make the threatened assessments of the notes, and by praying that such assessments be set aside; whereupon the court passed an order setting aside the assessments and ordering them expunged from the record. The defendants filed general and special demurrers to the petition, on various grounds, only one of which was passed on by the court, that being "because this action is premature, it appearing from the petition that the action is based on anticipated wrong which may never be done, especially in view of the allegations that the threatened assessments are void." The court sustained this ground of demurrer and dismissed the petitions. The plaintiffs excepted and brought the cases here for review.

■ The first question to be decided is whether, under the allegations of the petitions, the promissory notes in question are taxable in Fulton County; for it is conceded that if they are taxable there, the plaintiffs would have no right to ask the aid of a court of equity to enjoin their assessment by the county board of tax-assessors, and that the petitions presented no cause of action. It has long been settled by rulings of this court that a promissory note of a citizen of this State, owned by a non-resident and held at his domicile outside of this State, is taxable here only if it accrues out of or is an incident to property owned or a business conducted by the non-resident, or his agent, in Georgia. *Armour Packing Co.* v. *Clark,* 124 *Ga.* 369 (52 S. E. 145); *Armour Packing Co.* v. *Augusta,* 118 *Ga.* 552 (45 S. E. 424, 98 Am. St. R. 128); *Armour Packing Co.* v. *Savannah,* 115 *Ga.* 140 (41 S. E. 237); *City Council of Augusta* v. *Dunbar,* 50 *Ga.* 387; *Cary* v. *Edmondson,* 44 *Ga.* 651; *Collins* v. *Miller,* 43 *Ga.* 336. See Ga. Laws, Ex. Sess. 1937-1938, pp. 156, 160, for present law as to tax situs of intangible property. Applying that principle to the allegations of the petitions in these cases, we find no difficulty in holding that if the plaintiffs can establish the allegations of their petitions by proof, the notes in question are not taxable in Fulton County; for they allege in substance that neither of them has at any time kept the notes in Georgia, except temporarily, or had any agent in Georgia

authorized to invest its funds or to deal in any manner with the notes, and that none of the notes has arisen out of or been used as a part of any property owned or business conducted by the plaintiffs, or their agents, in this State. Therefore they have alleged causes of action which entitle them to be heard.

■ ■ The next question is, have the plaintiffs chosen the proper forum, or should they have contested the taxability of the notes in question by resorting to the method of arbitration provided in the law under which the defendants are alleged to be proceeding to tax them? That law, frequently called the tax-equalization act, was enacted in 1913, and is now, as amended, codified in chapters 92-69 and 92-70 of the annotated supplement to the Code. It created a board of tax-assessors in each county, with the duty to examine all tax-returns in the county; and if in their opinion the properties listed in any returns are incorrectly valued, to equalize and correct them. They are also authorized to seek out all property not returned for taxation, and to assess it against the owner at its fair valuation. After prescribing that the taxpayer shall be given notice of any corrections, changes, or equalizations made by the board, affecting his return, it is provided (Code, § 92-6912): "If any taxpayer is dissatisfied with the action of the board, he may . . give notice to the board that he demands an arbitration, giving at the same time the name of his arbitrator; the board shall name its arbitrator within three days thereafter; and these two shall select a third, a majority of whom shall *fix the assessments and the property on which said taxpayer shall pay taxes,* and said decision shall be final, except as far as the same may be affected by the findings and orders of the State Revenue Commission as hereinafter provided." (Italics ours.) The decision of the arbitrators, whose only required qualifications are that they shall be freeholders, must be rendered in ten days. Before entering upon their duties they are required to take an oath that they "will faithfully and impartially make a true and just assessment of the tax returns and property in question, and will determine the matters submitted to them according to law and justice and the equity of the case." The plaintiffs insist that the powers thus given to the arbitrators do not include the authority to determine the taxability of property, which involves a question of law, but are limited to a determination of questions of fact relating to its value; that, since

no legal forum has been provided wherein they can contest the taxability of their property, they are entitled to seek relief in equity; and that they are entitled to equitable relief, because the method of arbitration provided in the statute is unconstitutional for the various reasons given in the statement of facts above. The defendants reply, that the method of arbitration provided is not unconstitutional for any of the reasons asserted; that the power given to a majority of the arbitrators to "fix the assessments and the property on which the said taxpayer shall pay taxes" means that they have the authority to determine the taxability of such property, as well as to fix its value; and that if the taxpayer is dissatisfied with the findings of the arbitrators as to taxability, he may review their decision by certiorari to the superior court.

Many authorities have been cited and extensive arguments made by counsel for each side in support of their various contentions, which we have examined with much care. Our conclusion is that it was the intention of the legislature, not to clothe the arbitrators with power to determine the taxability of property, but to give them authority to settle disputes as to value. The first part of the clause outlining their function is clear. The arbitrators are to "fix the assessments." This can only mean that they are to determine valuation. The rest is so obscure as to be virtually meaningless. Does "fix . . the property on which said taxpayer shall pay taxes" mean that the arbitrators are merely to describe the property assessed? Or does it mean that they are to determine its ownership, or its location, or its taxability, or any other of a number of things which may be conjectured? We do not know. But they are sworn only to "make a true and just *assessment* of the tax returns and property in question." We are constrained to hold that only the part of the clause which authorizes the arbitrators to fix the assessments can be said to express with certainty the legislative will. To place any other contruction upon the statute would not only require a resort to guesswork, but would also necessitate the conclusion that the legislature had departed from its policy of permitting questions of taxability to be determined by petitions in equity, and questions of valuation to be settled by arbitration. After the Supreme Court of the United States held, in 1907 (Railroads *v.* Wright, 207 U. S. 127, 28 Sup. Ct. 47, 52 L. ed. 134), that the law of this State relating to the assessment of unreturned property by the comptroller-

general was unconstitutional because it failed to provide the taxpayer an opportunity to be heard as to the taxability of his property, the legislature in 1910 amended the law by providing (Code, § 92-6803) : "Should the taxpayer desire to contest the taxability of his property,  . .  he may do so by petition in equity in the superior court of Fulton County." And in the same act it was provided that should those taxpayers whose property is assessed by the tax-receiver of a county desire to contest the taxability of their property, they may do so by a "petition in equity in the superior court of the county where said property is assessed;" and that questions of taxable value should be decided by arbitration. Code, §§ 92-6802, 92-6804. Moreover, in this act, the first section of which is now codified (§ 92-6801), a legislative policy was declared as follows: "*In all cases* where taxes are authorized for any purpose, and no adequate provision is made in the law authorizing the same or in the general law for giving the taxpayer notice and opportunity to be heard as to the valuation and taxability of his property, the *method of assessing and collecting said taxes shall be as set forth in this act.*" (Italics ours.) That is, by petition in equity to determine taxability and by arbitration to settle contested valuation. See *Webb* v. *Newsom,* 138 *Ga.* 342, 344 (75 S. E. 106).

In all the laws enacted since that time, relating to assessment of property for taxation, except the tax-equalization act of 1913, now under consideration, and the act of 1938 creating the State Department of Revenue, we find provisions for contesting the *taxability* of property by petition in equity. Code, §§ 92-6104, 92-6703, 92-6704; Ga. Laws 1937, p. 497. In the act establishing the State Department of Revenue (Ga. L. Ex. Sess. 1937-1938, pp. 77, 99, 100) provision is made for a review of the decision of the board of tax appeals (created by the act to settle disputes as to valuation and taxability) by the superior court in a de novo investigation. In most of the acts relating to tax assessments passed since 1910 provision is made for contesting the *taxable value* of property by arbitration, although in the act of 1918 (Code, § 92-6703) a delinquent may by a petition in equity challenge the valuation placed on his property. It will thus be seen that while there have been exceptions in one or two instances from the general rule of determining *valuation* by arbitration, in no instance has the legislature departed from the policy of permitting contests of *taxability* to be determined

by the superior courts, and in every instance but one (Acts of 1937-1938, supra) taxability is determined by petition in equity. Before it should be held that the legislature has departed from this policy by vesting the final determination of the intricate legal questions usually involved in determining questions of taxability in a board of arbitrators whose members need only to be freeholders, the legislative intent to do so must be clear and unequivocal. We do not think the words authorizing the arbitrators to "fix . . the property on which said taxpayer shall pay taxes" meet this test. "It is dangerous to imply a legislative intent contrary to previous legislation, from doubtful expressions which may admit of different interpretations." *Trustees* v. *Atlanta, 76 Ga.* 181, 3 (*b*), 182. We hold that the method for contesting the taxability of the property in question is by petition in equity in the superior court.

The cases of *Rogers* v. *Hamby,* 163 *Ga.* 771 (137 S. E. 231), and *Pullman Co.* v. *Suttles,* 187 *Ga.* 217 (199 S. E. 821), are cited as authorities for the contrary view to that here expressed; but we do not so consider them. In the *Rogers* case the power of arbitrators to pass upon the taxability of property was not involved. The taxpayer had returned a certain amount of money which the county assessors increased by a stated sum. The taxpayer denied having the additional sum, and demanded arbitration to settle that issue of fact. He did not claim that the money was not taxable, or that it had no tax situs in the county, or in any way question its taxability. He failed to appear at a hearing set by the arbitrators, and then filed a petition in equity to enjoin the collection of the tax, which this court held was properly denied. In *Pullman Co.* v. *Suttles* the decision was bottomed on the proposition that a county board of tax-assessors can not make assessments againt a corporation which is required to make its returns to the comptroller-general. It was said, in the opinion on rehearing of that case: "The gist of this decision was that . . since the assessments were made under the Code, chapter 92-69, which expressly excepts corporations 'required to make their returns to the comptroller-general;' and since the sleeping-car company, being such a corporation, was thus deprived of the right to notice, hearing, and arbitration, therein afforded to other taxpayers," it "consequently was denied 'due process of law.'" By merely listing methods denied to the sleeping-car company but available to "other taxpayers" to contest an assess-

ment made by a county board, the court did not rule that they were the only methods available to "other taxpayers" or that arbitration is the method prescribed to determine the taxability of property under this chapter. Nor can the language in that opinion that "the procedure of §§ 92-6701 et seq., and 92-6804, limited to notices and assessments by county tax-receivers, could not be applied," be properly construed to mean that petitions in equity to contest taxability, as provided for in § 92-6804, are available only to parties assessed by tax-receivers, and therefore not available to persons whose property county boards are empowered to assess. What the court ruled was that the right to notice, hearing, etc., provided for in assessments made by county boards, is available to taxpayers who can be assessed under the Code, chapter 92-69, but that neither that procedure nor any other is provided if a county board attempts to assess a company whose returns are required to be made to the comptroller-general; and hence no "due process."

Since we have decided that a court of equity, and not a board of arbitration, is the proper forum for contesting the taxability of property sought to be assessed under the tax-equalization law as amended, it is not necessary to pass upon the constitutionality of the method of arbitration provided in that law. Nor is it necessary to decide whether the provision in the amendment of 1937, authorizing the assessors to impose a penalty of ten per cent., is constitutional if applied retrospectively. It is not clear from the records that the defendants are seeking to add it in these cases. Should they prevail when the cases are tried, and then seek to impose the penalty, the plaintiffs have ample remedies to contest its legality. *Pullman Co.* v. *Suttles,* supra.

■ None of the questions above decided were passed upon in the court below, but the petitions were dismissed on the ground of demurrer that they were premature, the judge basing his action on the cases of the *City of Atlanta* v. *King,* 182 *Ga.* 276 (184 S. E. 807), and *Cathcart Van & Storage Co.* v. *Atlanta,* 169 *Ga.* 791 (151 S. E. 489). This was erroneous. The facts in those cases, and in all other Georgia cases relied upon by the defendants on this point, are distinguishable from the cases at bar. In the *King* case the defendant was merely threatening to make a levy of an alleged void fi. fa., which the court held "may never be done." In the *Cathcart* case, in which the plaintiff sought to enjoin the de-

756

fendant from enforcement of an alleged unconstitutional provision of a municipal charter, it appeared that no arrest had been made, no property had been levied on, and there was no interference with the property or personal rights of the petitioner, but the petition was based upon the mere apprehension that such things might be done. In the cases at bar, as alleged in both petitions, the defendants had notified the plaintiffs that unless they returned the notes in question for taxation by a certain time the defendants would assess the property and place it on the tax digest; and in the amendment to the petition of the Columbus Company it was alleged the defendants on the day named did assess the notes and place them on the tax books of the county, after the judge had signed a temporary restraining order but before it was served. We think, under the facts alleged, which must be accepted as true in passing upon the demurrers, that these cases present more than a mere apprehension, and that they were not prematurely brought. Moreover, as appears from the amendment of the Columbus Company, the plaintiffs were fully justified in taking the defendants at their word. For cases upholding the right to injunctive relief against threatened collection of alleged unlawful taxes before a levy of the tax execution, see *Pullman Co.* v. *Suttles,* supra; *City of Colquitt* v. *Jeffords Oil Co.,* 170 *Ga.* 605 (154 S. E. 140); *McIntyre* v. *Harrison,* 172 *Ga.* 65, 72 (157 S. E. 499).

*Judgments reversed. Reid, C. J., Atkinson, P. J., and Bell, Jenkins, and Grice, JJ., concur.*