FORRESTER, revenue commissioner, *v.* PULLMAN COMPANY.

No. 13715.　May 17, 1941.

Spalding, Sibley, Troutman & Brock, E. H. Sheats, W. S. North-cutt, Standish Thompson, Ellis G. Arnall, attorney-general, and A. J. Tuten, assistant attorney-general, for plaintiff in error.

Howell & Post, L. M. Greenlaw, and H. S. Anderson, contra.

GRICE, Justice. ■ A State Board of Tax Appeals, consisting of the comptroller-general, the auditor, and the treasurer, ex officio, was created by section 18 of the act approved January 3, 1938. Georgia L. Ex. Sess. 1937-1938, pp. 77 et seq. Section 19 of that act declares in part that "The function of the Board of Tax Appeals shall be to review the assessments made by the State revenue commissioner when by such assessment, after hearing by the commissioner or his regularly authorized employee or agent, any taxpayer may be aggrieved and petition for said review." Code Ann., Cumulative Part, § 92-8421. An examination of other portions of the act of 1938, particularly those sections now codified as §§ 92-8434, 92-8445, and 92-8447, discloses that the commissioner himself has the power to determine the taxability of property; and since it is made the function of the Board of Tax Appeals to review the assessments made by the commissioner, this should be held to include not merely the amount of the tax assessment, but also whether or not the particular property was taxable. Nothing decided by this court in *Columbus Mutual Life Insurance Co.* v. *Gullatt*, 189 *Ga.* 747 (8 S. E. 2d, 38), *Allied Mortgage Companies Inc.* v. *Gilbert*, 189 *Ga.* 756 (8 S. E. 2d, 45), or *Gilbert* v. *Associated Mortgage Companies*, 189 *Ga.* 768 (8 S. E. 2d, 46), militates

against this view. On the contrary, it was said arguendo in the opinion in the first of these cases that the Board of Tax Appeals was "created by the act to settle disputes as to valuation and taxability," a statement which in our judgment is correct.

The question at issue is whether or not, under the existing laws of this State, the sleeping-cars here involved may be assessed for the purpose of county taxation by the State revenue commissioner on the basis of average number and average value, such official being now vested, under the act of 1938 (Ga. L. Ex. Sess. 1937-38, pp. 77, 80) with all the power and authority theretofore vested in the comptroller-general of this State with respect to taxation, as such power and authority is modified, limited, or enlarged by that act. As was said in *Pullman Co.* v. *Suttles,* 187 *Ga.* 217, 222 (199 S. E. 821), on the subject of sleeping-car taxation: "The Code, § 92-5902, which embodies as part of the general law certain provisions in the general tax act of 1927 (Ga. L. 1927, p. 97), thus re-enacted in the adoption of the Code (Ga. L. 1935, p. 84), provides in terms that 'all persons or companies owning or operating railroads . . or *sleeping-cars* in this State . . shall be *required to make annual tax returns* of all property located in this State to the *comptroller-general;* and the laws now in force providing for the taxation of railroads in this State shall be applicable to the assessments of taxes on the businesses above stated.' See also the general tax act of 1935 (Ga. L. 1935, p. 65). Following the sections of the Code (§§ 92-2601 et seq.) relating to returns, assessments, and payments of taxes to the comptroller-general on rolling-stock and other properties of railroads, the Code, § 92-2605, also embodying part of the general tax act of 1927 (§ 9(2), Ga. L. 1927, p. 97), further provides that: '*Each non-resident person or company whose sleeping-cars are run in this State* shall be taxed as follows: ascertain the whole number of miles of railroad over which sleeping-cars are run and the entire value of all sleeping-cars of such person or company, then tax such sleeping-cars at the regular tax rate imposed upon the property in this State on a valuation based on the proportion to the entire value of such sleeping-cars that the length of lines in this State over which such cars are run bears to the length of lines of all railroads over which such sleeping-cars are run. *The returns shall be made to the comptroller-general.* . . If the taxes herein provided are not paid,

the comptroller-general shall issue executions against the owners of such cars, which may be levied by the sheriff of any county in this State upon the sleeping-car or cars of the owners who have failed to pay the taxes.'" While the statutes with respect to taxation of railroad-cars and sleeping-cars are distinct and are separately codified, the nature of the equipment is obviously similar; and in determining the question of taxability for county purposes as here sought, recourse may appropriately be had to the legislation affecting the rolling-stock of railroads. "Long prior to the adoption of our Code, the legislature, in the charters of certain railroad companies, limited the taxation to be imposed on their property to a certain *per cent.* of their net incomes, and in the case of at least one railroad, the Augusta & Savannah, to a certain *per cent.* of its gross income. In effect, these charters gave the companies indicated partial exemptions from taxation, and, under decisions made by the Supreme Court of the United States, are inviolable contracts between the State and the railroads." *Columbus Southern Railway Co.* v. *Wright,* 89 *Ga.* 574, 578 (15 S. E. 293).

In 1874 (Ga. L. 1874, p. 107), the General Assembly enacted that from and after the passage of that act all railroad companies should annually return to the comptroller-general the value of their property, the act being codified in part (§ 92-2602) as follows: "The presidents of all the railroad companies, including street railroads, dummy railroads, and electric railroads, in this State shall be required to return on oath, annually, to the comptroller-general, the value of the property of their respective companies, without deducting their indebtedness; each class or species of property to be separately named and valued, so far as the same may be practicable, to be taxed as other property of the people of the State; and said returns shall be made under the same regulations provided by law for the returns of officers of other incorporated companies, which are required by law to be made to the comptroller-general; Provided, that the said railroads shall be taxable for city purposes as other property is taxed for city purposes, and any law making railroad companies taxable by counties will be applicable to street railroad companies of every character." An act of 1883 (Ga. L. 1882-3, p. 42, Code, § 92-2601), specially provided for taxation of rolling-stock of railroads by apportionment, as follows: "Railroad companies operating railroads lying partly in this State

and partly in other States shall be taxed as to the rolling-stock thereof and other personal property appurtenant thereto, and which is not permanently located in any of the States through which said railroads pass, on so much of the whole value of rolling-stock and personal property as the length of the railroad in this State is proportional to the whole length of the railroad, without regard to the location of the head office of such railroad companies." After the passage of the act of 1874, supra, several cases came before the Supreme Court, involving the question whether or not counties and municipalities had the power to tax the property of railroads within their territorial limits. It was held, in effect, that the special legislation by the act of 1874, as to State taxation of railroads, excluded county and municipal taxation of such properties and the appurtenances necessary to maintain and operate them, no provision for levying and collecting such tax having been made in the act. See *Savannah, Florida & Western Railway* v. *Morton,* 71 *Ga.* 24; *City of Albany* v. *Savannah, Florida & Western Railway,* 71 *Ga.* 158; *County of Houston* v. *Central Railroad,* 72 *Ga.* 211; *City of Atlanta* v. *Georgia Pacific Railway,* 74 *Ga.* 16; *City Council of Augusta* v. *Central Railroad,* 78 *Ga.* 119. These cases were decided in 1883, 1884, and 1886.

The defect with respect to the right of a county to tax railroad property was overcome by the act of 1889 (Ga. L. 1888-89, p. 29; Code, § 92-2701), as follows: "On or before the first day of March each railroad company in this State shall make an annual return as of January first preceding to the comptroller-general, for the purposes of county taxation in each of the counties through which said road runs, in the following manner: Said return shall be under the oath of the president or other chief executive officer, and shall show the following facts as they existed on the first day of January preceding, to wit: first, the aggregate value of the whole property of said railroad company; second, the value of the real estate, and track-bed of said company; third, the value of the rolling-stock and all other personal property of said company; fourth, the value of the company's property in each county through which it runs." In discussing this act it was said, in *Columbus Southern Railway Co.* v. *Wright,* supra, in reference to the exemptions in the case of such railroad charters: "The legislature, in passing the act now before us, evidently took into consideration the facts just

stated, and, in view of the contingency that the general scheme of taxation contemplated might not be applicable to these companies, undertook to inaugurate a system of county taxation of railroad property, which would operate upon every railroad in the State, and thus meet all the requirements of our constitution. Accordingly the third section seeks to impose upon the property of all railroads in the State a uniform ad valorem taxation for the benefit of the counties through which they run, measured in each particular county by the rate of taxation there prevailing, and the purpose of the fourth section is to impose upon the property of railroads having charter exemptions a system of taxation for the benefit of counties, to the full extent authorized by the charters of such railroads, in the event the third section could not be applied to them." The defect with respect to the right of a municipality to tax railroad property was overcome by the act of 1890 (Ga. L. 1890-91, p. 152; Code, § 92-2801). Until the passage of these acts providing for county and municipal taxation, the act of 1874, supra, was exhaustive on the subject of railroad taxation, as was recognized in *Staten* v. *Savannah, Florida & Western Ry. Co.*, 111 *Ga.* 803 (36 S. E. 938), where a county, in 1899, attempted to collect back taxes on railroad property necessary for the use and maintenance of the railroad, and in which the court held: "Under the decisions of this court in the cases of *Savannah Ry.* v. *Morton*, 71 *Ga.* 24, *City of Albany* v. *Railway*, 71 *Ga.* 158, *County of Houston* v. *Railroad*, 72 *Ga.* 211, *City of Atlanta* v. *Railway*, 74 *Ga.* 16, and *City Council of Augusta* v. *Railroad*, 78 *Ga.* 119, neither counties nor municipal corporations had, prior to the act of October 16, 1889, providing a system for the taxation of railroad property by counties, any statutory authority to tax such property within their territorial limits; nor was there any machinery provided by the legislature for them to assess and collect taxes on such property. There is not, in the act just mentioned or in any legislation subsequent thereto, any attempt to confer such authority, or supply such machinery, with reference to 'back taxes' on railroad property; and it necessarily follows that it was not within the power of the authorities of a particular county or of its tax-collector, in 1899, to levy and collect taxes on railroad property necessary for the use and maintenance of the railroad for the years 1880 to 1889, inclusive, and to assess double taxes for those years against the railroad company."

As stated in *Greene County* v. *Wright,* 126 *Ga.* 504, 506 (54 S. E. 951), also, "Prior to the passage of the act of 1889 (Acts 1889. p. 29), now embodied in the Political Code, §§ 784 et seq. [1933, §§ 92-2701 et seq.], the property of railroad companies in this State could not be subjected to taxation for county purposes, except that under the act of 1883 [?] (Acts 1882-3, p. 39) [repealed by the acts of 1889 and 1890, supra] the property of such companies not used in the conduct of its usual and ordinary business was made taxable by counties and municipalities wherein such property was located; and prior to the act of 1890 (Acts 1890-1, p. 52) now embodied in the Political Code, §§ 725 et seq., municipalities could collect no tax of such corporations except as was provided by the act of 1883, cited above. *Staten* v. *Savannah, Florida & Western Ry. Co.,* 111 *Ga.* 803 (36 S. E. 938), and cit.; *Georgia Railroad & Banking Co.* v. *Wright,* 125 *Ga.* 589 (54 S. E. 52). The purpose of the acts of 1889 and 1890 was to subject all the property of railroad corporations, not exempt by law, to county and municipal taxation, and to provide the necessary machinery to accomplish this purpose." It was further said, in reference to the act of 1889: "The act is exhaustive on the subject of taxing these properties for county and municipal purposes." Quoting from *Columbus Southern Railway Co.* v. *Wright,* supra, the court said: "The scheme of the act is to tax the located property of the railroad, real and personal, in each county where it is situated, at the county rate of taxation of force in that county, and to apportion the transitory, frequently moving personalty, in fair proportion among the several counties. This class of property may be fairly said to be situated at one place as well as another, or to 'reside,' if that word is allowable, along the entire length of the road. *Having no fixed situs, it is absoluetly right to apportion it, and that is really all that could be appropriately done with it for taxing purposes.*" (Italics ours.) The court further said: "The purpose of the act of 1889, as we have seen, was to tax located property, both tangible and intangible, in the county where located, and that the *rolling-stock and other unlocated personalty should be distributed to the several counties through which the road runs.* [Italics ours.] In the *Columbus Southern* case (89 *Ga.* 459) the words, 'rolling-stock and other personal property' are held to mean the rolling-stock and other unlocated personalty; the word 'other,'

228

therefore, the court says, 'as here used, must mean other than located, i. e., the unlocated personalty, or personalty of like nature with rolling-stock.' . . The rolling-stock is to be distributed, and other unlocated personalty, or personalty of like nature with rolling-stock. This is the kind of property, under the act, which is to be distributed. All other property is to be taxed where located, whether the location is an actual, physical location or located by a legal fiction." The quotation involved in the *Greene County* case was whether or not certain shares of stock of the Western Railway of Alabama were taxable in the county, and it was necessary for the court to determine whether or not such stock was "located" property within the meaning of the act of 1889; but in analyzing what was comprehended in located property, or property having a situs in the county, the court determined absolutely that rolling stock is not located property but is taxable only in a distributive way.

It necessarily follows from what is said above that if it could be said that the concluding sentence in § 92-5902 (relating to returns of sleeping-car companies), "and the laws now in force providing for the taxation of railroads in this State shall be applicable to the assessments of taxes on the businesses above stated," applies not merely to the manner of making returns to the State taxing officer, now the State revenue commissioner, but also comprehends county taxation of sleeping-cars, such cars obviously being the equivalent of rolling-stock, the exclusive method of taxation would be in the manner provided by chapter 92-27 of the Code, in § 92-2701 of which it is provided that returns shall be made, including the value of rolling-stock, to the State taxing officer, in § 92-2702 of which it is provided that the ordinary or other county authority shall certify and transmit to such officer the county tax rate or tax levy, and in § 92-2703 of which it is provided that whenever such certificate is received by the State officer he shall proceed to assess the amount of each railroad company's property for county taxation as follows: "The amount of tax to be assessed upon the rolling-stock and other personal property is as follows: As the value of the property located in the particular county is to the value of the whole property, real and personal, of the said company, such shall be the amount of rolling-stock and other personal property to be distributed for taxing purposes to such county. The

value of the property located in the county and the share of the rolling-stock and personal property thus ascertained, and apportioned to each of such counties, shall be the amount to be taxed to the extent of the assessment in each county."

A request was made that the court review and overrule the decisions in *Savannah, Florida & Western Ry.* v. *Morton*, 71 *Ga.* 24, *City of Albany* v. *Savannah, Florida & Western Ry.*, 71 *Ga.* 158, *County of Houston* v. *Central Railroad*, 72 *Ga.* 211, *City of Atlanta* v. *Georgia Pacific Railway*, 74 *Ga.* 16, *City Council of Augusta* v. *Central Railroad Co.*, 78 *Ga.* 119, and *Staten* v. *Savannah, Florida & Western Ry. Co.*, 111 *Ga.* 803. Upon review, we are satisfied as to their soundness, and decline to overrule them.

The first question propounded by the Court of Appeals is answered in the affirmative; the second and third questions in the negative. *All the Justices concur.*