GEORGIA RAILROAD & BANKING CO. *v.* REDWINE,
Commissioner.

No. 17467. ARGUED MAY 15, 1951—DECIDED JUNE 13, 1951—REHEARING
DENIED JULY 24, 1951.

*James E. Harper, Spalding, Sibley, Troutman & Kelley, Furman Smith,* and *Joseph B. Cumming,* for plaintiff.

*Eugene Cook, Attorney-General, M. H. Blackshear Jr., Deputy Assistant Attorney-General, Lamar W. Sizemore, Assistant Attorney-General,* and *Robert E. Hicks,* for defendant.

*Victor Davidson, Joseph G. Faust, Joel H. Terrell, Carlisle Cobb, James Barrow, J. Glenn Stovall, C. C. King, Harold Sheats, Standish Thompson, William T. Dean, J. H. McCalla, A. M. Kelley, Roberts & Roberts, Julius A. McCurdy, A. F. Jenkins, Osgood O. Williams, J. F. Hardin, W. P. Congdon,* for persons at interest, not parties.

CANDLER, Justice. On May 26, 1950, Charles D. Redwine, as State Revenue Commissioner for Georgia, assessed for ad valorem taxation certain real and personal property in this State belonging to the Georgia Railroad and Banking Company and notified the company that the assessment as made by him would become final after the expiration of thirty days there-

from unless a written protest was filed thereto. The assessment so made was for the years 1939 to 1950, inclusive, and was for State, county, municipal, and school-district taxes at the rate fixed for all other like property in this State for each of the years mentioned. The company was also notified that appropriate adjustments would be made for the taxes which it had previously paid during the years involved at the rate of one-half of one percent of its net earnings. On June 22, 1950, the company filed a written protest, alleging that the assessment was illegal because its property was, for reasons therein stated, exempt from all ad valorem taxes. After a hearing, the commissioner sustained the validity of his assessment and the company took an appeal to the Superior Court of Richmond County. By final decree that court likewise sustained the assessment as made, and the exception here is to that judgment.

■ It is argued by counsel for the plaintiff in error that the trial court had no jurisdiction to entertain an appeal in this case from the State Revenue Commissioner's final decision. If that be true, the judgment complained of is a nullity and must be reversed. Code, § 110-709; *Head* v. *Bridges*, 67 *Ga.* 227; *Fussell* v. *Dennard*, 118 *Ga.* 270 (45 S. E. 247); *Jones* v. *Smith*, 120 *Ga.* 642 (48 S. E. 134); *Franklin County* v. *Crow*, 128 *Ga.* 458 (57 S. E. 784). The parties to litigation cannot give to a court jurisdiction of the subject matter of a suit when it has none by law; and when a trial court, in a case over which it has as to subject matter no jurisdiction, renders therein any judgment except one of dismissal, and the case is brought here for review upon a writ of error, this court will of its own motion reverse the judgment whether exception to it for want of jurisdiction in the court below be taken in the bill of exceptions or not. *Smith* v. *Ferrario*, 105 *Ga.* 51 (31 S. E. 38); *O'Brien* v. *Harris*, 105 *Ga.* 732 (31 S. E. 745); *Cutts* v. *Scandrett*, 108 *Ga.* 620 (34 S. E. 186); *Kirkman* v. *Gillespie*, 112 *Ga.* 507 (37 S. E. 714); *Dix* v. *Dix*, 132 *Ga.* 630, 633 (64 S. E. 790). And, in the circumstances of this case, it cannot be said that the plaintiff in error is by conduct estopped to assert the trial court's lack of jurisdiction to entertain and render final judgment on its appeal thereto. "Jurisdiction of the subject matter of a suit cannot be conferred by agreement or consent, or be

waived or based on an estoppel of a party to deny that it exists." *Langston* v. *Nash*, 192 *Ga.* 427, 429 (15 S. E. 2d, 481), and the cases there cited.

■ The right of appeal from one court to another is not a common-law right, but depends on statute; and the same authority which bestows it may likewise withhold or withdraw it. *Griffin* v. *Sisson*, 146 *Ga.* 661 (92 S. E. 278). Our Constitution of 1945 provides that the superior court shall have appellate jurisdiction "in all such cases as may be provided by law," and in *DeLamar* v. *Dollar*, 128 *Ga.* 57, 66 (57 S. E. 85), it was said: "The appellate jurisdiction of the superior court must be exercised, and can only be exercised, in such cases as are provided by law." Therefore we must look to and find authority in our statutes for the right of appeal to the superior court in this case if it exists as counsel for the defendants in error insist. By Chapter 92-59 of the Code of 1933 all persons or companies owning or operating railroads, street railroads, suburban railroads, or sleeping cars; and all persons or companies, including railroads, doing an express, telephone, or telegraph business in this State are among those who were required to make annual tax returns of all property owned by them, and located in this State, to the Comptroller-General. Code, § 92-5902. The Comptroller-General was required to carefully scrutinize the returns so made to him, and if in his judgment the property embraced therein was returned below its value, or the return was false in any particular, or in any wise contrary to law, he was required within 60 days thereafter to correct it and assess the value, from any information he could obtain. Code, § 92-6001. Also, if the Comptroller-General found that any owner of such property had refused or failed to make a return of it for taxation, he was authorized by section 92-6103 of the Code, after giving the owner thereof 20 days notice in writing, to assess it for State, county, municipal and school district taxes, from the best information obtainable as to its value. However, no provision for an appeal from the assessment of the Comptroller General was provided for in either event; but if the owner of such property disputed his assessment as to taxability, by section 92-6104 of the Code he was permitted to raise that question by petition in equity in

the Superior Court of Fulton County; and if dissatisfied with the assessment as to value, his remedy was by arbitration under section 92-6002 of the Code. And later, by section 80 of the reorganization act of 1931 (Ga. L. 1931, p. 33), the owner of such property was permitted to contest the question of its taxability by an affidavit of illegality. Code, § 92-7301. See also, in this connection, *Hicks* v. *Stewart Oil Co.*, 182 *Ga.* 654 (4) (186 S. E. 802), and *Carreker* v. *Green & Milam*, 183 *Ga.* 864 (189 S. E. 836). The legislature, by an act approved January 3, 1938 (Ga. L., Ex. Sess. 1937-38, p. 77), created the State Department of Revenue and vested in a State Revenue Commissioner all of the powers and duties respecting taxation previously performed by the Comptroller-General. A State Board of Tax Appeals, consisting of the Comptroller-General, the Auditor and the Treasurer, ex officio, was created by the act, and section 19 thereof declares in part that, "The function of the Board of Tax Appeals shall be to review the assessments made by the State Revenue Commissioner when by such assessment, after hearing by the Commissioner or his regularly authorized employee or agent, any taxpayer may be aggrieved and petition for said review." Section 45 of the act also provides that, "The findings by the Board of Tax Appeals shall not be final; but either party may appeal from any order, ruling, or finding of the said board to the superior court of the county of the residence of the taxpayer unless the taxpayer be a railroad or other public service corporation or non-resident, in which event the appeal of either party shall be to the superior court of the county in which is located its principal place of doing business, or in which the chief or highest corporate officer, resident in this State, maintains his office." Accordingly, by the act of 1938 provision was made by the legislature for a review of the decision of the Board of Tax Appeals (created by the act for the purpose of settling disputes as to valuation and taxability) by the superior court in a de novo investigation, when a dissatisfied taxpayer entered an appeal thereto from the board's decision. See *Columbus Mutual Life Ins. Co.* v. *Gullatt,* 189 *Ga.* 747 (8 S. E. 2d, 38). But, except as shown above, the taxing act of 1938 made no provision for an appeal to the superior court for the review of any question.

The legislature, however, in 1943 passed an act (Ga. L. 1943, p. 204), which in several respects materially changed the act of 1938. By Section 2 of it, all the sections in Chapter III of the act of 1938, which created the Board of Tax Appeals and defined its jurisdiction, were expressly repealed and new sections were enacted in lieu thereof. Concerning the right of appeal, Section 18 of the amending act of 1943 reads as follows: "Except as otherwise provided by this act, all matters, cases, claims and controversies, of whatsoever nature arising in the administration of the revenue laws, or in the exercise of the jurisdiction of the State Revenue Commissioner or the Department of Revenue, as conferred by this act, shall be for determination by the State Revenue Commissioner, subject to review by the courts as provided for by Section 45 of Chapter IV of this Act. The effect of this section shall be that, except as hereinafter provided, all final rulings, orders, and judgments of the State Revenue Commissioner shall be subject to appeal and review under Section 45 of this act in the same manner, under the same procedure, and as fully, as if same had been considered ·and passed upon by the State Board of Tax Appeals." But Section 19 of the amending act of 1943 expressly declares that "The provisions of the foregoing section with reference to reviewing assessments of the State Revenue Commissioner shall not apply to assessments for ad valorem taxation against any person, corporation or company which was required by Chapter 92-59 of the Code of 1933 to return his or its property for ad valorem taxation to the Comptroller-General and is now required by such Chapter and this act of January 3, 1938, to make such returns to the State Revenue Commissioner." We can not agree with counsel for the defendants in error that the exception referred to in section 18 and expressly stated in section 19 of the amending act of 1943 has reference to an assessment of value only. An examination of the taxing act of 1938 discloses that the State Revenue Commissioner has power to determine the taxability of property as well as authority to fix its value for taxing purposes, and the act of assessing such property for taxation includes a determination of the former as well as an ascertainment of the latter. *Forrester* v. *Pullman Co.,* 192 *Ga.* 221, 222

(15 S. E. 2d, 185). According to Black's Law Dictionary (3d ed.), the word "assessment" when used in connection with the subject of taxation, includes all of the steps necessary to be taken in the legitimate exercise of the power to tax. Therefore it seems very clear to us, from the plain language employed, that the legislature, by sections 18 and 19 of the amending act of 1943, provided for an appeal to the superior court, under the procedure prescribed by section 45 of the act of 1938, from any final ruling, order, or judgment of the State Revenue Commissioner, except any final ruling, order, or judgment of the commissioner respecting assessments for ad valorem taxation against any person, corporation, or company which was required by Chapter 92-59 of the Code of 1933 to return his or its property to the Comptroller-General for taxation, and who now by the act of 1938 is required to make such returns to the State Revenue Commissioner, among which are railroad companies. Consequently, we must and do hold that our statutes make no provision for an appeal to the superior court from the decision of the State Revenue Commissioner by a railroad company whose property has been assessed by the commissioner for ad valorem taxation. That being true, the Superior Court of Richmond County had no jurisdiction to entertain the appeal in this case; and the judgment complained of is for that reason a nullity and must be reversed.

*Judgment reversed. All the Justices concur, except Duckworth, C.J., and Atkinson, P.J., who dissent. Pharr, Judge, concurs specially.*

DUCKWORTH, Chief Justice, and ATKINSON, Presiding Justice, dissenting. For the reasons stated in division 1 of the special concurrence of Judge Pharr, we dissent from the opinion of the majority and do not concur in the judgment of reversal upon the ground on which the majority judgment is based. Since, under the ruling by the majority, the merits of the case are not passed upon, we therefore intimate no opinion with reference to the merits.

PHARR, Judge, concurring specially. 1. For the reasons hereinafter set forth, I am compelled to dissent from the foregoing opinion on the question of jurisdiction.

Originally, all railroads were required to make their tax re-

turns to the Comptroller-General (Code, § 92-5902). There was some uncertainty under the Reorganization Act of 1931 (Ga. L. 1931, p. 7) as to what duties were left with the Comptroller-General; but by section 4 of the act of 1938 (Ga. L. Ex. Sess. 1937-38, pp. 77, 80) all duties relating to matters of taxation theretofore vested in the Comptroller-General were vested in the State Revenue Commissioner. The 1938 act as changed by the amendment of 1943 (Ga. L. 1943, p. 204) is now codified in the Ga. Code, Annotated Supplement, and reference will be made to the sections as they appear there.

Without the excepting clause § 92-8426.4 provides in part as follows: ". . all matters, cases, claims and controversies, of whatsoever nature arising in the administration of the revenue laws, or in the exercise of the jurisdiction of the State Revenue Commissioner or the Department of Revenue, as conferred by this Chapter shall be for determination by the State Revenue Commissioner, subject to review by the courts as provided for by section 92-8446. The effect of this section shall be that, . . all final rulings, orders and judgments of the State Revenue Commissioner shall be subject to appeal and review under section 92-8446."

Section 92-8446 (which is the codification of section 45 of the 1938 act) provides in part as follows: "Either party may appeal from any order, ruling, or finding of the said Commissioner to the superior court of the county of the residence of the taxpayer, unless the taxpayer be a railroad or other public service corporation or nonresident, in which event the appeal of either party shall be to the superior court of the county in which is located its principal place of doing business, or in which the chief or highest corporate officer, resident in the State, maintains his office."

Under the language of these sections, without the excepting clauses, any final ruling, order, or judgment of the Revenue Commissioner may be appealed to the superior court, and it appears clear that this would include any ruling, order, or judgment in which the taxpayer is a railroad company. Thus, unless the *determination of liability* for ad valorem tax of a railroad is specifically excluded or excepted, then a railroad may appeal such a ruling to the superior court.

Section 92-8426.4 contains at the beginning the words, "except as otherwise provided by this l a w [92-8426.4 to 92-8426.6]," and in the second sentence, "except as hereinafter provided." From this language and from a careful scrutiny of all three sections it appears that the only exception is that set out in § 92-8426.5. The pertinent parts of that section are as follows: "T h e provisions of section 92-8426.4 with reference to reviewing assessments of the State Revenue Commission shall not apply to assessments for ad valorem taxation against any person, corporation or company which was required by Chapter 92-59 of the Code of 1933 to return his or its property for ad valorem taxation to the Comptroller-General and is now required by such Chapter and this Chapter to make such returns to the State Revenue Commissioner. The State Revenue Commissioner shall carefully scrutinize such returns made to him, and if in his judgment the property embraced therein is returned below its value or the return is false in any particular, or in any wise contrary to law, he shall, within 60 days thereafter, correct the same and *assess the value,* from any information available. If any such person, corporation, or company shall be *dissatisfied with the assessment or correction of such returns* as made by the State Revenue Commissioner or the Department of Revenue, such taxpayer shall have the privilege, within 20 days after notice of such assessment and correction, *to refer the question of true value or amount to arbitrators* as provided for by Chapter 92-60 of the Code of Georgia of 1933. Such arbitrators shall consist of one chosen by the taxpayer and one chosen by the Governor. . . The decision and award of the arbitrators or of the arbitrators and the umpire shall be subject to appeal and review in the same manner as decisions and orders of the State Revenue Commissioner are subject to appeal and review under the terms of section 92-8446."

The words, "with reference to reviewing assessments," are different from the language used in the preceding section. The preceding section gives the Revenue Commissioner the broad power to make a determination of all matters, cases, claims, and controversies of whatsoever nature arising in the administration of the revenue laws, and gives the right of appeal from

all final rulings, orders, and judgments of the commissioner. The word "assessments" is not used.

Thus we must determine whether the words, "assessments for ad valorem taxation" (against a railroad), as used in § 92-8426.5 mean the determination of the single issue of tax liability of a railroad where there is no question of valuation.

At first glance, and because of the broad and varied meanings given to the word "assessment" in statutes, decisions, and common usage, the right of appeal by a railroad may seem to be excluded. However, in order to determine the present issue it is necessary to give careful consideration to the meaning of the word "assessment" as used in this section, and endeavor to ascertain what the legislature intended in using it as it did. While the language used says "the provisions of the preceding section with reference to reviewing assessments," nothing is said in the preceding section with reference to reviewing assessments. The preceding section deals only with the power of the commissioner to determine all matters, cases, claims, and controversies of whatsoever nature and it further says that the effect of the section shall be that all final rulings, orders, and judgments of the commissioner shall be subject to review. By referring to the preceding section, it is apparent that "assessment" is embraced in the larger power of determining all cases, claims, matters, and controversies of whatsoever nature, and is included somewhere in rulings, orders, and judgments. Thus the exception carves out of the orders, rulings, and judgments only the assessment portion. To break it down a little further, we should look to the language of § 92-8426.5, in which the word "assessment" is used, to see if there is any indication from other language exactly what is meant by the word "assessment". The whole purport of § 92-8426.5 is that on questions of valuation, an appeal may be had to arbitration and from there an appeal to the superior court. Thus, the whole of § 92-8426.5 seems intended to deal only with the matter of providing the opportunity for arbitration of valuation. Section 92-8426.5 says that the commissioner shall scrutinize the returns and "assess the value." It says that, if any such person be dissatisfied with the "assessment," he may refer the question of "true value or amount" to arbitra-

tors. All through this section it is apparent that it is dealing with the question of fixing value, and not with the question of taxable liability. Thus, if any light is thrown on the use of the word "assessments" in the first sentence by the other provisions of § 92-8426.5, it is that "assessments" means the determination of true value or amount. No mention is made of determining tax liability. The word "assessment" is used in the third sentence, wherein it is provided that, if the taxpayer "be dissatisfied with the assessment," he may "refer the question of true value or amount to arbitrators." It seems to us inescapable that the word "assessment" used in the third sentence, just referred to, is so tied in with the rest of that sentence as to mean only the question of true value or amount. Now, if it means valuation in the third sentence, does it not mean valuation in the first sentence? There is no indication of any intention to attach a different meaning to the same word used twice in the same section. If it means value, or valuation, or fixing value in the third sentence, then is it not logical to say that it means the same thing in the first sentence? If assessment means the fixing of value in the first sentence, then it would read to the effect that the provisions of the preceding section with reference to the reviewing of valuations fixed by the State Revenue Commission shall not apply to determinations of value for ad valorem taxes against a railroad. To construe it that way makes sense. To construe it that way does not take away the right of appeal from a determination of tax liability.

Let us analyze it another way. What does the word "assess" mean? Its origin is from the Latin word "assessare," which means to value for taxation. In Webster's New International Dictionary (2d ed., 1947) one of the definitions of "assess" is "to value," and one of the meanings of "assessment" is "valuation of property for the purpose of taxation." It is true that other definitions are given. In *Dunn* v. *Harris,* 144 *Ga.* 157, 163 (86 S. E. 556), the court said: "Assessment is quasi judicial, and consists in making out a list of the taxpayer's taxable property and *fixing its valuation* or *appraisement.*"

In *Columbus Mutual Life Ins. Co.* v. *Gullatt,* 189 *Ga.* 747, the court discusses "assessment" at some length and shows a

distinction between "assessment" and "taxability." On page 752, it is said: "The arbitrators are to 'fix the assessments.' This can only mean that they are to determine valuation." And on page 753, the court says: "In most of the acts relating to tax assessments passed since 1910 provision is made for contesting the *taxable value* of property by arbitration." And further the court says: "It will thus be seen that, while there have been exceptions in one or two instances from the general rule of determining *valuation* by arbitration, in no instance has the legislature departed from the policy of permitting contests of *taxability* to be determined by the superior courts." Thus, the court not only shows the distinction between taxability and "assessment" as valuation, but also indicates the general policy of the legislature in providing arbitration for valuation and contests of taxability by the superior courts. That general scheme and plan is carried out in the present act under consideration if the word "assessment" is not given a broader definition than it justly deserves.

Of course, a great deal of the confusion is brought about by the loose use of the word "assessment." Common usage has brought it to mean anything relating to the imposition of taxes, and it is not uncommon to use the expression as synonymous with levying a tax, imposing a tax, fixing tax liability, or determining value. But, in the ad valorem taxing process, the present case is a good illustration of what occurs. First, of course, there must be a law imposing the tax. Second, there must be a determination of tax liability against the person or corporation. Third, there must be a determination of the value of the property taxed ad valorem, and fourth, the necessary proceeding to enforce the tax. Upon analysis, it will appear clear that only the third step is the assessment step, that is, where the value of the property is determined the act of assessment is performed. No assessment can be made until the second step is complied with, and that is the determination of taxability. So, in the present case the commissioner made a determination of tax liability. The assessment followed by virtue of the agreement, both of the taxpayer and the commissioner, on the valuation of the railroad's property. The only issue raised was the taxability, not the valuation or assess-

ment, and since no question of valuation was involved, there could be no appeal to arbitration. But since a determination of taxability was made by the commissioner, that was a final ruling, order and judgment of the Revenue Commissioner. By the appeal in this case, it is not sought to review the assessment, but only to review the determination of taxability. Thus, § 92-8426.5 does not apply to this case because there is no attempt to review the assessment, but only the ruling of taxability. The validity of the assessment would depend upon the validity of the ruling of taxability.

If the words, "shall not apply to assessments for ad valorem taxation against" a railroad, embrace the determination of liability rather than simply the determination of property and value, then the law means that every taxpayer except a railroad has the right to appeal the legal determination of his liability for taxes to the superior court, and a railroad is given the right of appeal to the superior court only where the question of true value or amount is concerned, by demanding arbitration, and thereafter appealing to the court. Such a construction would mean that every taxpayer could have all questions of liability, property, and values appealed to the superior court, except that railroads could not have the sole question of liability or taxability determined by the superior court on appeal, even though they, like all other taxpayers, could have all other questions determined by appeal to the superior court. As we view it, § 92-8426.5 simply means that, where questions of value or amount are involved, railroads shall have a right to demand arbitration before appealing to the superior court.

In the present case, there is no controversy between the commissioner and the railroad as to value, and the word "assessment" is not used by the commissioner in making his determination of liability on May 26, 1950. The only question is that of determination of liability by virtue of the contention of the railroad that it is not subject to ad valorem tax as such, but only to the tax fixed upon its net income by its charter. That the commissioner has the power to determine this question under § 92-8426.4 is without doubt, and we do not believe that the language of § 92-8426.5 excludes the railroad from appealing this determination directly to the court.

It seems to us from all of the language used that a sound, common-sense construction of the provisions of the act of 1943, as codified in the sections referred to, and the provisions of section 45 of the 1938 act, as codified, means that from a determination of liability the railroad may appeal directly to the superior court, and that the only exception to the right of appeal of any taxpayer is that, where value or amount is involved upon a return of a public-service corporation, arbitration shall first be had before appealing to the superior court. Any other construction leaves uncertain and indefinite how a railroad company, or similar body, can have its tax liability adjudicated in the courts. Why should that remedy be clouded or denied by a construction of language which, if susceptible of two constructions, ought to be construed as affording a clear, speedy, and direct path for the judicial determination of a taxpayer's liability?

While the taxpayer owes the State the duty of paying every tax legally imposed upon him, the State owes him a corresponding duty of good faith in providing a means of having a judicial determination of whether or not he is subject to the tax imposed. We are fortified in our determination of the issue under consideration by the fundamental conviction that it is right and just for the taxpayer to have this opportunity for an adjudication by the court of the question of taxability. From a study of the provisions of Title 92 of our Code, we are constrained to the view that there is no part of our law more perplexing and confusing than the Code provisions relating to procedures involved in the administration of those laws. There exists much confusion as to the matter of affidavit of illegality, and other procedure for a taxpayer of the kind here involved to raise the issue of taxability. The history of this litigation demonstrates that confusion. It is our belief that one of the purposes of the 1938 and 1943 Georgia Laws was to clarify rather than add to that confusion. We believe that the construction herein placed upon those sections will result in that clarification, and we therefore conclude that the railroad had the right to appeal from the decision of the commissioner to the superior court, and that this court has jurisdiction to determine the case now before us.

■ The majority of the court being of the opinion that the court does not have jurisdiction, a discussion of the other issues in the case would be of only academic interest. As written, my views on the fundamental principles involved are somewhat voluminous and it would be a useless burden upon the record to add them here. It is sufficient, therefore, for me to say that in my opinion the determination of liability for ad valorem taxation against the plaintiff in error in this case was erroneous. It is by virtue of this conclusion that I concur in the judgment of reversal.