28660. FORRESTER, revenue commissioner, *v.* PULLMAN CO.

DECIDED JUNE 11, 1941.

*B. B. Zellars, assistant attorney-general, Spalding, Sibley, Troutman & Brock, E. H. Sheats, W. S. Northcutt, Standish Thompson,* for plaintiff.

*Howell & Post, L. M. Greenlaw, H. S. Anderson,* for defendant.

SUTTON, J. On May 1, 1939, T. Grady Head, as State revenue commissioner, made an ad valorem assessment of taxes against the Pullman Company for county and county educational purposes for Fulton County, for the years 1932 to 1938 inclusive, the assessment being the alleged value of thirty-four sleeping-cars of the company which were temporarily out of train in Fulton County from time to time. A protest of the company was overruled by the revenue commissioner, and the company filed a petition to the State Board of Tax Appeals of Georgia for review of the assessment, as provided for in the act of 1938 (Ga. L. Ex. Sess. 1937-1938, pp. 77, 100). In the proceeding before the State Board of Tax Appeals it was stipulated between the parties that the sleeping-cars it was sought to tax are cars which come to rest in Fulton County after being out of train, and which are used by the company within the

territorial limits of Fulton County in the conduct of its business as a non-resident sleeping-car company. It was agreed, that, if taxable under an assessment, the number of cars involved would be twenty-five of the value of $250,000, and that they consisted of two groups: From 1932 to 1936, inclusive, there were seven cars which remained in Fulton County each day in each year for as long as twenty-four hours; in 1937 and 1938 there were ten cars; from 1932 to 1936, inclusive, there were eighteen additional cars on each day of each year on a car-hour basis (ascertained by adding car hours for which other individual cars were in the county and dividing by twenty-four) and in 1937 and 1938 there were fifteen such cars. The identity of the cars was, of course, not constant, but the number of cars in the groups shown was constant. It was contended by the revenue commissioner that these cars were not returned for taxation, and that they were taxable in the manner sought. The State Board of Tax Appeals reversed and set aside the assessment made by the revenue commissioner, who thereupon appealed from such ruling to the superior court, as authorized by the act of 1938, supra, in which act it is provided that "The pro-cedure provided by law for applying for and granting appeal from the court of ordinary to the superior court shall apply as far as suitable to the appeal authorized herein, except that the appeal authorized herein may be filed within fifteen (15) days from the date of judgment by the board."

The case was submitted by agreement to the judge of the supe-rior court, without the aid of a jury. In addition to the stipula-tion above mentioned there was evidence on the trial that the cars it was sought to tax were constantly engaged in interstate com-merce, and that the overwhelming bulk of their earnings was from interstate, and not intrastate, journeys. It was admitted that the Pullman Company was a corporation organized under a special act of the legislature of the State of Illinois. There was evidence that the company, during the years in question, in accordance with the general tax acts of 1927 and 1935 (Ga. L. 1927, p. 97; Ga. L. 1935, p. 65), had filed with the comptroller-general of the State detailed returns of its real estate and personal property in Georgia and in various cities and counties, as required by law, including the County of Fulton, giving the values of such real and personal property in the State, and, further, the total value of its sleeping-

cars and equipment wherever owned, in Georgia and out of the State, and the amount of the "Georgia proportion" thereof, the total mileage over which its cars are run in and out of the State, the total value of its properties everywhere in its sleeping-car business, and the "Georgia proportion" thereof.

The chief clerk of the then comptroller-general testified by affidavit, without dispute, that although returns had been made, as shown, to that officer during the years in question, and taxes on other property had been assessed by that officer for county and municipal purposes, he had made no such assessment for taxation by Fulton County on any of the sleeping-cars or rolling-stock of the Pullman Company, a proportionate part of which, designated as "Georgia trackage proportion" in the State as a whole, had been included in the annual returns, and that no notice as to any apportionment of such cars or rolling-stock to Fulton County had ever been given, and no execution had ever been issued to collect such a tax. In evidence were receipts, showing the payment to the comptroller-general of State taxes and payment to the tax-collector of Fulton County of county taxes during the years in question, but these county receipts admittedly did not include any taxes on sleeping-cars or rolling-stock of the company as being located in Fulton County. The district superintendent of the company, with office in Atlanta, testified: "The Pullman Company does, from time to time, have Pullman cars in Fulton County, which are not in trains, for short periods of time. They lay over for a few hours, and are cleaned. Occasionally the Pullman Company has cars in Fulton County that arrive in extra service and stay in Fulton County for a matter of hours, sometimes as much as a day or two, awaiting return service. They are in Fulton County between the times that they are used in trains coming in and the time when they are used in trains going out. During the time from 1932 through 1938 the Pullman Company has had between approximately twenty-two and approximately thirty-five daily departures from Fulton County, the number being dependent upon various conditions. These cars arrive from other points; some of them leave within an hour after they arrive, others within two hours, and none of such regularly operated cars stays here as much as twenty-four hours. As to the Pullman cars described in paragraph 1 of the stipulation made in this case [the seven individual cars hereinbefore referred to as re-

maining in Fulton County each day in the year for as long as twenty-four hours, 1932 to 1936, inclusive], affiant is familiar with the facts, and his strong recollection is that the same cars there described were not in Fulton County on January 1st of any two years mentioned there. Although he could not be absolutely certain that they were not even once the same cars on any two days in any year, yet his best recollection is that they were not the same cars on any two days of the same year. Relative to the cars described in paragraph 2 of said stipulation [the eighteen individual cars hereinbefore referred to as being out of train in Fulton County from 1932 to 1936, inclusive, on each day of the year on car-hour basis], these cars were not usually the same from day to day. Not a single one of such cars is scheduled to stay in Atlanta for as long as twenty-four hours, and his best recollection is that none of them stays in Fulton County for as long as twenty-four hours in any one day. Relatively to the cars mentioned in paragraph 3 of the stipulation [the ten individual cars out of train remaining in Fulton County each day in the year for as long as twenty-four hours, 1937 and 1938], his strong recollection is that the same cars there described were not in Fulton County on January 1st of any two years mentioned there. Although he could not be absolutely certain that they were not the same cars on any two days in any year, yet his best recollection is that they were not the same cars on any two days of the same year. Relatively to the cars mentioned in paragraph 4 of the said stipulation [the fifteen individual additional cars out of train in Fulton County on each day of the year on car-hour basis, 1937 and 1938], these cars were not usually the same from day to day. Not a single one of such cars is scheduled to stay in Atlanta for as long as twenty-four hours, and his best recollection is that none of them stays in Fulton County for as long as twenty-four hours in any one day." L. S. Taylor, vice-president of the Pullman Company, testified by affidavit that the company is not a common carrier, does not engage in the business of transportation, and does not itself furnish motive power to move its sleeping-cars when attached to railroad-trains, and that it has at all times been engaged in business as a sleeping-car company, its business consisting in furnishing Pullman cars to the various railroads throughout the United States, including railroads operating trains through the State of Georgia.

It was contended by the revenue commissioner that the assessments and the procedure were valid under the uniformity provision of art. 7, sec. 2, par. 1, of the State constitution (Code, § 2-5001) requiring that "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws," and in view of the provision against exemption from taxation in par. 4 of that article and section (Code, § 2-5005), that "All laws exempting property from taxation other than the property herein enumerated shall be void," and in view of §§ 92-101, 92-105, making taxable "all real and personal property," and requiring that "non-residents, whether their property in this State is real or personal, shall pay taxes on the same herein." The Pullman Company contended that it had paid all taxes required by law; that the assessment was void, inasmuch as the sleeping-cars had no situs in Fulton County; that if taxed they must be taxed under an apportionment, and not under an assessment based upon average number and average value; that in fact the act of 1927 (Ga. L. 1927, pp. 56, 97) and the act of 1935 (Ga. L. 1935, pp. 11, 64, 65), as codified in part in §§ 92-2605, 92-5902, pre-empted the field as to taxation of Pullman cars, and no provision has been made for county taxation with respect to such cars; that the attempted taxation violates the due-process clauses of the State and Federal constitutions and the commerce clause of the Federal constitution; and that under no circumstances could the revenue commissioner assess the cars for more than two years back taxes. It was also contended that the decision in *Pullman Co.* v. *Suttles,* 187 *Ga.* 217 (199 S. E. 821), in which the Supreme Court of this State reversed the judgment of the superior court of Fulton County denying an application by the Pullman Company to enjoin the tax-collector, the tax-receiver, and the members of the board of tax-assessors of Fulton County from their threatened issuance, levy, and collection of tax fi. fas. and assessments, made by the county board of assessors in 1937 for the years 1932 to 1936, inclusive, on thirty-four Pullman sleeping-cars, assessed at the value of $340,000 for each year, bars the assessment in the present case, and that the county taxes can not be collected by the State revenue commissioner in its behalf.

The State Board of Tax Appeals ruled that the property in-

volved, being rolling-stock, was not subject to taxation by Fulton County, and reversed and set aside the assessment. The superior court on appeal affirmed the judgment of the board of tax appeals. The exception is to that judgment. The contentions above set forth are made by the respective parties in their briefs in this court.

■ On proper motion made by J. M. Forrester, present State revenue commissioner, he is hereby substituted as plaintiff in error in the present case, this being in compliance with and as provided by the act of the legislature approved March 20, 1941.

■ In answer to certified questions from this court as shown in its decision in *Forrester* v. *Pullman Co.*, 192 *Ga.* 221 (15 S. E. 2d, 185), the Supreme Court ruled: (*a*) "The State Board of Tax Appeals has authority to determine the taxability of property which has been assessed for taxation by the State revenue commissioner." (*b*) "The State revenue commissioner has no authority to assess for county taxation Pullman cars owned by the Pullman Company, a corporation of Cook County, Illinois, the cars having no fixed situs in the county, but being temporarily out of train in Fulton County, the assessment being based on average number and average value of the cars out of train, and being applied to one group consisting of Pullman cars which, in each day of a number of alleged taxable years, remained in the county as long as twenty-four hours, and another group consisting of additional cars in the county on each day of a number of alleged taxable years, the period of time being ascertained by adding the car hours for which such cars were in the county and dividing by 24; nor has he in the manner attempted by the taxing authorities of Fulton County, as dealt with in *Pullman Co.* v. *Suttles*, 187 *Ga.* 217 (199 S. E. 821), authority to assess for county taxation the Pullman Company's Pullman cars temporarily out of train in the county, where the question of notice to the property owner or his right to be heard is not involved."

■ Under the facts in the present case and the rulings of the Supreme Court in *Forrester* v. *Pullman Co.*, supra, the State revenue commissioner was without authority to make the assessment for county purposes on the Pullman sleeping-cars of the defendant, in the manner made; and therefore the judgment of the superior court, affirming the judgment of the State Board of Tax Appeals,

which ruled that the property in question was not taxable for county purposes and reversed and set aside the assessment made by the State revenue commissioner, is affirmed, for the reason that the assessment for county purposes as made was illegal and void.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*