PULLMAN COMPANY *v.* SUTTLES, tax-collector, *et al.;*
*et vice versa.*

Nos. 12449, 12550.  October 13, 1938.  Rehearing denied November 25, 1938.

*Howell & Post, L. M. Greenlaw,* and *H. S. Anderson,* for plaintiff.

*Walter C. Hendrix, E. H. Sheats, W. S. Northcutt,* and *Standish Thompson,* for defendants.

220

JENKINS, Justice. 1. One against whom an unlawful exaction in the form of a tax is sought to be made, by virtue of unconstitutional statute or procedure, is entitled to an injunction to restrain its collection, if adequate remedy at law by affidavit of illegality is not provided; and it is not necessary that he first tender any part of the wholly illegal tax, or resort to arbitration under invalid or inapplicable statutes, or await the levy of a tax execution. *Harris Orchard Co.* v. *Tharpe,* 177 *Ga.* 547 (2) (170 S. E. 811, 88 A. L. R. 1212); *City of Atlanta* v. *Jacobs,* 125 *Ga.* 523 (2), 527 (53 S. E. 534), and cit.; *McIntyre* v. *Harrison,* 172 *Ga.* 65, 72 (157 S. E. 499), and cit.; *Wright* v. *Union Tank Line Co.,* 143 *Ga.* 765 (85 S. E. 994); *Lane* v. *Unadilla,* 154 *Ga.* 577 (2) (114 S. E. 630); *Southwestern Railroad* v. *Wright,* 68 *Ga.* 311 (2), 320; *Wright* v. *S. W. R.,* 64 *Ga.* 783, 789; *Vincent* v. *Poole,* 181 *Ga.* 718, 720 (184 S. E. 269); 61 C. J. 781, § 1005.

2. "A county, being a corporation created by and existing under the laws of this State, can exercise only such powers as are conferred on it by law; and when it undertakes through its constituted authorities to exercise the power of taxation in any given manner, a clear and manifest legal right to do so must appear."

*Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 276); *Bowers* v. *Banks,* 152 *Ga.* 659 (111 S. E. 38), and cit.; *McCrory Co.* v. *Board of Commissioners of Fulton County,* 177 *Ga.* 242 (170 S. E. 18).

3. "The assessment of a tax is action judicial in its nature, requiring for the legal exertion of the power such opportunity to appear and be heard as the circumstances of the case require. . . Somewhere during the process of the assessment the taxpayer must have an opportunity to be heard, and . . this notice must be provided as an essential part of the statutory provision, and not awarded as a mere matter of favor or grace." A denial of this right, as under former laws relating to assessments by the comptroller-general, prior to amendment now providing an opportunity to be heard, is a failure to afford due process of law within the intention of the 14th amendment of the Federal constitution, and of art. 1, par. 3, of the State constitution (Code, § 2-103). Central of Ga. Ry. Co. *v.* Wright, 207 U. S. 127, 138, 141, 142 (28 Sup. Ct. 47, 52 L. ed. 134, 12 Ann. Cas. 463), and cit.; Turner *v.* Wade, 254 U. S. 64 (41 Sup. Ct. 27, 65 L. ed. 134); *City of Macon* v. *Ries,* 179 *Ga.* 320, 323 (176 S. E. 21), and cit.; *Lane* v. *Unadilla,* supra; *Shippen Lumber Co.* v. *Elliott,* 134 *Ga.* 699 (3), 702 (68 S. E. 509). As to the amendment of the original law relating to State-comptroller assessments, and correcting the former infirmity, see *State* v. *Western & Atlantic R. Co.,* 136 *Ga.* 619, 627 (71 S. E. 1055); *Gaulden* v. *Wright,* 140 *Ga.* 800, 802 (79 S. E. 1125); Code, §§ 92-6002 et seq., 92-6103, 92-6802, 92-6803.

4. While chapter 92-69 of the Code, creating in the several counties of the State a county board of tax-assessors, and prescribing their duties with reference to omitted or undervalued properties in the county, makes provision, in §§ 92-6911 et seq., for notice, hearing, and arbitration in behalf of taxpayers desiring to contest assessments made against them, where tax returns have been made or should have been made to the tax-receiver of the county (Code, §§ 92-6902, 92-6911), yet § 92-6901 provides that "nothing in this chapter shall apply to those persons, firms, or corporations who are required to make their returns to the comptroller-general." § 92-6915 contains a like exception. These two latter sections, therefore, expressly exclude any one in the group mentioned from

having the benefit of any such "due process" procedure as may be afforded under this chapter.

5. The Code, § 92-5902, which embodies as part of the general law certain provisions in the general tax act of 1927 (Ga. L. 1927, p. 97) thus re-enacted in the adoption of the Code (Ga. L. 1935, p. 84), provides in terms that "all persons or companies owning or operating railroads . . or *sleeping-cars* in this State . . shall be *required to make annual tax returns* of all property located in this State to the *comptroller-general;* and the laws now in force providing for the taxation of railroads in this State shall be applicable to the assessments of taxes on the businesses above stated." See also the general tax act of 1935. Ga. L. 1935, p. 65. Following the sections of the Code (§§ 92-2601 et seq.) relating to returns, assessments, and payments of taxes to the comptroller-general on rolling stock and other properties of railroads, the Code, § 92-2605, also embodying part of the general tax act of 1927 (§ 9 (2), Ga. L. 1927, p. 97), further provides that: *"Each non-resident person or company whose sleeping-cars are run in this State* shall be taxed as follows: ascertain the whole number of miles of railroad over which sleeping-cars are run and the entire value of all sleeping-cars of such person or company, then tax such sleeping-cars at the regular tax rate imposed upon the property in this State on a valuation based on the proportion to the entire value of such sleeping-cars that the length of lines in this State over which such cars are run bears to the length of lines of all railroads over which such sleeping-cars are run. *The returns shall be made to the comptroller-general.* . . If the taxes herein provided are not paid, the comptroller-general shall issue executions against the owners of such cars, which may be levied by the sheriff of any county in this State upon the sleeping-car or cars of the owners who have failed to pay the taxes." These sections requiring "companies owning or operating . . sleeping-cars in this State" and "non-resident" companies "whose sleeping-cars are run in this State" to make their returns to the comptroller-general, such a company necessarily falls within the express exception of the Code, § 92-6901, where an assessment is made or attempted to be made by a county board of tax-assessors as to its sleeping-cars within a county for county taxation. As to such an assessment by a county board, therefore, that section and other sections of

chapter 92-69 of the Code fail to provide in favor of the sleeping-car company any "due process" for resisting the assessment by the board, such as this chapter may provide in cases of other tax-payers, and such an application of the statutes and procedure by the county board as to the sleeping-car company contravenes the Federal and State constitutions. The procedure of the Code, §§ 92-6002 et seq. and 92-6103, under which railroads are given oppor-tunity for a hearing and arbitration in resistance of assessments on omitted or undervalued property, even if applicable to sleeping-car companies under §§ 92-5902 and 92-2605, is by express terms limited to assessments made by the comptroller-general. Accord-ingly, since the assessments in this case were made only by the Fulton County board of tax assessors under chapter 92-69 of the Code and the procedure of that chapter, without any assessment or participation by the comptroller-general, the procedure in cases of assessments by him would have no application. For the same reason, §§ 92-6802 and 92-6803, providing for notice, arbitration, and opportunity to contest by petition in equity, being also limited to assessments and procedure through the comptroller-general, are without application. And for a like reason, that the petition in no way indicates any notice or assessment by the county tax-re-ceiver, or any procedure other than by the county board of tax-assessors, under chapter 92-69 of the Code, the procedure of §§ 92-6701 et seq., and 92-6804, limited to notices and assessments by county tax-receivers, could not be applied.

6. Under the preceding rulings, the application by the county authorities of the tax-assessment statutes to the assessments by the county board of tax-assessors on sleeping-cars of the petitioner in Fulton County failed to afford it "due process of law;" and for this reason, while the court correctly denied the motion to dismiss the action, it was error to refuse an injunction and to dissolve the previous restraining order.

7. Under the foregoing rulings, it is unnecessary to determine whether other statutes and procedure attacked by the petition are unconstitutional or invalid on the grounds urged; or what, if any, powers may exist in the comptroller-general under the statutes mentioned or other laws to assess sleeping-cars for *county taxa-tion,* as in cases of railroad rolling-stock under the Code, §§ 92-2701 et seq., relating to railroad companies; or what, if any, powers

may exist in county boards of tax-assessors (in view of the powers delegated by statute to the comptroller-general) to assess sleeping-cars actually "located" in their respective counties, and the proper basis for any such taxation; or irrespective of what powers may exist in the comptroller-general or in the county boards of tax-assessors; under what facts sleeping-cars temporarily in particular counties may be lawfully so assessed, and the proper basis for any such *county taxation.*

*Judgment reversed on the main bill of exceptions; affirmed on the cross-bill of exceptions. All the Justices concur.*

### ON MOTION FOR REHEARING.

JENKINS, Justice. The gist of this decision was that the assessments for county taxes by the board of tax-assessors of Fulton County against the "daily average" of sleeping-cars in the county during the years involved were invalid against the sleeping-car company, since the assessments were made under the Code, chapter 92-69, which expressly excepts corporations "required to make their returns to the comptroller-general;" and since the sleeping-car company, being such a corporation, was thus deprived of the right to notice, hearing, and arbitration, therein afforded to other taxpayers, and consequently was denied "due process of law," in contravention of the Federal and State constitutions. The motion for rehearing contends that this court overlooked that part of the stipulation in this case in which it was agreed between the parties that during the years in question there was an "average" of 34 sleeping-cars "in the territorial limits of Fulton County from day to day," including January 1, and that a "fair valuation" of such cars was $340,000; that the previous assessments by the county board of tax-assessors being in accord with such a present stipulation, any hearing to the company thereon was needless; and that the company can not in this case raise the question of "due process of law," because it was held by the United States Supreme Court in St. Louis-San Francisco Ry. Co. *v.* Middlekamp, 256 U. S. 226 (41 Sup. Ct. 489, 65 L. ed. 905), that the taxed corporation, having returned figures which the authorities accepted as a basis for the tax imposed, could not afterward complain that it had been taxed disproportionately. In that case it was said: "The objection most insisted upon in this court was that the statute made no provision for a hearing; and that although the plaintiff applied to

the tax-commission for a hearing and had one, the statute was bad because it did not provide one in terms. Central of Ga. Ry. Co. v. Wright, 207 U. S. 127, 138 (supra). The mode of collecting the tax is by a suit where, of course, the present plaintiff would be heard; but it is said that the judgment of the commission can be attacked only for want of jurisdiction and fraud. We can not suppose, however, that any question of law apparent on the face of the record would not be open. The constitutional objection mainly relied upon necessarily would be. As in this case the commission accepted the plaintiff's figures and the contest is wholly upon matters of law, we see nothing of which the plaintiff can complain in this respect. There is, to be sure, one charge involving matters dehors the record. It is alleged that the plaintiff was taxed disproportionately as compared with other railroads. But the plaintiff was taxed upon its own figures in accordance with the statute, and could not complain of that." While as to "matters of fact" relating to the question of disproportionate taxation, the court thus held, that, the railway company having fixed the values of its assets in its own return to the tax commission, and the commission having acted upon those figures, the company could not complain on that question, on the constitutional question as to due process of law by reason of the failure of the State statute to provide for a hearing, it does not seem to have been held that the company had no right to be heard. It was said that "the mode of collecting the tax is by a suit where, of course, the present plaintiff would be heard," and that "any question of law apparent on the face of the record," such as the "constitutional objection mainly relied upon, necessarily would be" open. In the present case, the sleeping-car company made no return as to the property in question, as to which the county board of tax-assessors could have acted or did act. Nor does the Georgia law provide for the collection of such a tax by suit, in which the petitioner would have a right to be heard before the tax-assessments would become final. The stipulation related merely to the matter of proving averments in the pleadings.

But even if the Middlekamp case could be taken as supporting the contention of the tax-officers as to "due process," we can not agree that the mere stipulation that there was a "daily average" of sleeping-cars of a certain value in the county amounted to an

agreement that these cars were taxable by the county, or that the assessments and taxes were valid. Such a construction is plainly negatived by the attack on such validity, as made by the petition and the evidence in matters both of fact and law. If the question of "due process" thus presented had related merely to the amounts or the values fixed by the county board, it might be argued that under the Middlekamp case the petitioner was bound by its stipulation. But questions of "due process" relating to tax-assessment statutes extend beyond the mere right to attack an assessment as excessive, and include also questions as to whether the assessed property was taxable and the tax was valid, and the right to be heard thereon. Among many cases recognizing this right, the United States Supreme Court held, in Hagar v. Reclamation District, 111 U. S. 701 (4 Sup. Ct. 663, 28 L. ed. 569), that "a law authorizing the imposition of a tax or assessment upon property according to its value does not infringe that provision of the fourteenth amendment to the constitution, which declares that no State shall deprive any person of property without due process of law, if the owner has an opportunity to question the validity or the amount of it, either before that amount is determined or in subsequent proceedings for its collection." This language was repeated in Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 537 (16 Sup. Ct. 83, 40 L. ed. 247), and in Weyerhaueser v. Minnesota, 176 U. S. 550, 557 (20 Sup. Ct. 485, 44 L. ed. 583). Again in Security Trust Co. v. Lexington, 203 U. S. 323, 333 (27 Sup. Ct. 87, 51 L. ed. 204), the court said that "before this special assessment could be actually enforced or during the process of enforcement the taxpayer must have an opportunity to be heard as to its validity and extent," and that the question is not whether this was afforded "as a matter of grace or favor," but whether it was "provided for by the statute."

In *Georgia R. &c. Co.* v. *Wright,* 124 *Ga.* 596, 603, 605, 615-618 (53 S. E. 251), as in the present case, the principal question as to "due process" related to *"liability* for the tax sought to be enjoined," and whether "shares of stock in a foreign railroad company, whose line of road lies outside this State, are . . *taxable* in Georgia." It was there held that the due-process clause was not violated by former statutes, since amended, as to assessments by the comptroller-general. In reversing that decision, the United

States Supreme Court in Central of Ga. Ry. Co. *v.* Wright, 207 U. S. 127 (supra), again recognized that due process must include an opportunity to question the taxability of the property. Referring to the Lexington case, supra (203 U. S. 323), the court said: "In that case it was further held that where the procedure in the State court [under the statutory provisions] gave the taxpayer an opportunity to be heard upon the value of his property and extent of the tax . . the requirement of due process of law was satisfied. Applying the principles thus settled to the statutory law of Georgia, as construed by its highest court, does the system provide due process of law for the taxpayer in *contesting the validity of taxes* assessed under its requirements? . . The penalty for failure to return, no matter how honest or well grounded the taxpayer may have been in his belief that the property was *not subject to taxation,* compels him to submit to the final and conclusive assessment made by the taxing officer. . . If for good reason the taxpayer contests the *taxability of his property* and does not return it, the door of opportunity is closed upon him. As in the present case, courts may differ as to the *taxable character of the property,* but the taxpayer must concede its *taxability,* or be forever concluded by a determination of its value judicial in its nature . . in a proceeding where he has no legal right to be heard . . the system provided in Georgia by the statutes of the State as construed by its highest court requires of the taxpayer that he return all his property, *whether its liability is fairly contestable or not,* upon pain of ex parte valuation, against which there is no relief in the tax proceedings or in the courts, except in those cases where fraud or corruption can be shown in the action of the assessing officer." (Italics ours.) It was therefore held that this system, before its subsequent amendment, did not afford due process of law. That due process includes the right to question the "validity" of the tax assessed was recognized also in Turner *v.* Wade, 254 U. S. 64, 67 (supra), where in referring to the Wright case it was said: "In considering certain sections of the Georgia tax laws this court held . . that due process of law requires that after such notice as may be appropriate, the taxpayer have opportunity to be heard as to the validity of a tax and the amount thereof by giving him the right to appear for that purpose at some stage of the proceedings." See also 26 R. C. L. 348, 349, §§ 305, 306, and cit.

For these reasons the sleeping-car company was not precluded, by its stipulation merely that it had a "daily average" of sleeping-cars of a stated value in the county, from raising the question of due process as to the taxability of such cars and the failure of the procedure by the county board of tax-assessors to afford an opportunity to be heard on the validity of the tax assessments.

It is further contended by the movants that this court overlooked the stipulation, not only that "the assessment made by the Fulton County authorities . . was not made on information certified by the comptroller-general," but also that the assessment was not "made wholly on information obtained from the office of the comptroller-general." It does not appear, however, how this stipulation could aid the movants. On the controlling question of due process of law, there is nothing to indicate how the use by the county of any such outside information affected the failure of the procedure to afford the sleeping-car company a right to be heard as to the taxability of the property and the validity of the assessments, or how the use of any such outside information rendered the assessments any more valid than if the information had been obtained wholly from returns to the comptroller-general. This is especially true under the decision next considered, on which the movants rely.

Finally, it is contended that this court overlooked the case of *Georgia Railroad &c. Co.* v. *Hutchinson, 125 Ga. 762 (2) (54 S. E. 725)*, and that such case requires a different decision. It was there held: "The county authorities of any county adopting the provisions of [the school-district tax act of 1905, Ga. L. 1905, p. 425] may levy the tax authorized thereby upon the property of railroad companies, *the assessment thereon being based on the returns made to the comptroller-general. The county authorities may obtain a certified copy of such returns from the comptroller-general on demand, to be used in the assessment and levy of the tax."* (Italics ours.) That case involved the essential question whether, under the then existing laws, and under the school-district tax act there involved, a county could levy and assess against a *railroad company* a tax based wholly on data obtained from a certified copy of a return made by the company to the comptroller-general, where there was no express provision in the school-district tax act as to the assessment and collection of the tax. In that case the

company had included in its return to the comptroller the same properties which were assessed by the county, and had also fixed their value; and the certified copy of such return and information therein was the only basis of the county assessment. The court said: "This value has been fixed either by the railway company in its return or (in case of disagreement between the railroad officials and the comptroller-general) by statutory arbitration. In either event, the value of the property has been fixed in a manner prescribed by law and after the railway company has had an opportunity to be heard." The taxability and valuation of the properties having been actually fixed by the company itself in its return, and the county authorities having used only the data from a certified copy of such return as the basis of their assessment, manifestly no question of due process of law arose. The present case, however, differs, not only for that reason but for the additional reasons: (1) As the movants themselves insist, the county authorities did not use any certified copy of any return to the comptroller-general, but based their assessments at least in part on other information; (2) under the undisputed evidence, even if a certified copy or data therefrom had been or legally could have been used, it could not have supplied any basis for the assessments, since the returns to the comptroller-general did not include sleeping-cars located in Fulton County; (3) the statutes here involved, relating to assessments by county boards of tax-assessors (Ga. L. 1913, pp. 123, 129; Code, §§ 92-6901 et seq.), and the question of due process thereunder could not have been involved in the former case, since it was decided years before the enactment of the present law.          *Rehearing denied.*