## A02A0325. BURT, BURT & RENTZ RETIREMENT PENSION TRUST et al. v. DOUGHERTY COUNTY TAX ASSESSORS.

(569 SE2d 557)

RUFFIN, Judge.

The three appellants in this case are Dougherty County property owners[1] ("Property Owners"), who challenged the County Tax Assessors' alleged failure to properly assess real and personal property interests held by utility companies, and to uniformly assess other real and business personal property located in the county. After the Dougherty County Board of Equalization denied their claims, the Property Owners appealed to the superior court. The superior court denied the Property Owners' motion for summary judgment and partially granted the County Tax Assessors' motion for summary judgment. The Property Owners filed the instant appeal, and for reasons that follow, we affirm.

1. Before turning to the merits of the Property Owners' appeal, we must address two impediments to our review posed by their appellate brief. First, the Property Owners enumerate nine errors, but have not shown how they preserved these nine asserted errors for review. It is not our function to cull the record to insure that the appellants properly raised the arguments below. Court of Appeals Rule 27 (a) (1) clearly places that burden on appellants. Second, notwithstanding their nine enumerated errors, the Property Owners' brief contains only two sections of argument. Court of Appeals Rule 27 (c) (1) requires that arguments "follow the order of the enumeration of errors, and *shall be numbered accordingly*."[2] The rule is not a mere formality, but is intended to assist the Court in addressing the individual merits of each enumerated error. By failing to separately address each assertion and not showing how they were preserved, the Property Owners have seriously hampered our review of their appeal. These deficiencies are all the more troubling because we granted the Property Owners' motion to exceed the 30-page limit imposed by Court of Appeals Rule 23 (e). Though we will address the merits of the arguments raised, the Property Owners are wholly responsible for any claim that we have failed to sufficiently address each of their nine enumerated errors.

2. One of the utility companies at issue is Colonial Pipeline Company ("Colonial"), which owns utility easements on property located in Dougherty County. Most of Colonial's easements are 30 feet wide, and the company has 34.2 miles of pipe running through the county.

---

[1] The appellants are Burt, Burt & Rentz Retirement Pension Trust, Pace Burt, Inc., and Westover Apartments, L.P. This appeal originated from three separate actions that were consolidated by the superior court.

[2] (Emphasis supplied.)

In its tax returns to the Georgia Department of Revenue ("Revenue Department"), Colonial lists 34.2 miles of pipe, two meter stations, and other business personal property, but does not separately list the easements. The Property Owners presented affidavits establishing that the easements have a value equal to 70 percent of the value of the underlying fee simple property and that Colonial has easements on property owned by the Property Owners.

Another of the utilities at issue is Georgia Power Company. Georgia Power has utility easements in the county that are 100 feet wide. In addition, Georgia Power owns over 1,000 acres of submerged land in the county. Like Colonial, Georgia Power lists its lines, wires, and other business personal property on its Revenue Department tax returns, but does not separately list the easements or the submerged land.

In assessing utility companies such as Colonial and Georgia Power for the property they own in Dougherty County, the County Tax Assessors rely on valuations reported by the Revenue Department. The Revenue Department's public utility valuation manager, Joseph Slappey, testified at length about the method it uses to value utility company property. According to Slappey, a utility company is required to annually supply the Revenue Department with a complete set of its financial records. His office reviews those records and determines "an overall value of the company as if somebody were buying it." The Revenue Department then apportions the overall value of the utility among the various counties "by the [company's] original investment in that tax jurisdiction." Although a utility company lists individual assets in each county on its returns, the Revenue Department is primarily concerned that the total value of those assets is consistent with the Revenue Department's independent valuation calculated under this method. Slappey testified that the Revenue Department considers a utility company's "gross investment" in a county, rather than the value of "each individual item," because his office does not have the expertise required to independently appraise much of the specialized property, such as pipe and meter stations, owned by the utilities.

Dougherty County's chief appraiser acknowledged that his office has the authority to question the valuations approved by the Revenue Department, but "the normal practice is that the State does the tax returns" and his office accepts them without further investigation. The County Tax Assessors also give deference to the business personal property listed on the returns of businesses. The county has approximately 6,000 business personal property owners, and, other than randomly selecting approximately 30 returns for audit each year, the County Tax Assessors accept a taxpayer's return without significant scrutiny if there is no "large disparity" from the previous year's return.

In addressing the parties' cross-motions for summary judgment, the court ruled that, under *Bd. of Tax Assessors &c. v. Clary*,[3] the Property Owners were precluded from challenging the "State Revenue Commissioner's decisions regarding valuation and assessment of utility property."[4] The court also found that the County Tax Assessors were entitled to summary judgment on the Property Owners' challenge to the alleged disparate treatment of business personal property and real property because the State Revenue Commissioner was entitled to use reasonable means to assess the property. Finally, the court concluded that a factual issue remained concerning the Property Owners' claim that the County Tax Assessors placed an excessive value on their property.

As best we can discern from the Property Owners' brief, they raise three arguments concerning the trial court's order. First, the Property Owners argue that the trial court erred in precluding them from challenging the County Tax Assessors' practice of relying entirely on the Revenue Department's assessments. Second, the Property Owners argue that the County Tax Assessors are improperly accepting the Revenue Department's valuation of utility property without independently examining those valuations. And third, the Property Owners argue that the County Tax Assessors should give greater scrutiny to business personal property returns to ensure that taxpayers accurately list and value the property they own.

(a) Pretermitting whether the Property Owners should have been allowed to challenge the County Tax Assessors' practice of relying entirely on the Revenue Department's assessments of utility property, we conclude that this practice is authorized under Georgia law. This issue was addressed by our Supreme Court in *Telecom\*USA v. Collins*,[5] a case relied on by the Property Owners. In *Collins*, the Court recognized that, before 1988, Georgia's Revenue Code made the State Revenue Commissioner solely responsible for assessing a utility's taxable assets.[6] In 1988, however, the legislature amended OCGA § 48-2-18 to permit counties to "play a new role in the taxation of utilities. The essence of the counties' new role is the right to make an assessment that is different from the Commissioner's proposed assessment and to deal with appeals from its final assessment."[7]

The Property Owners quote *Collins* for the proposition that County Tax Assessors are required to modify the assessments in this

---

[3] 161 Ga. App. 828, 830 (3) (290 SE2d 110) (1982).
[4] (Punctuation omitted.)
[5] 260 Ga. 362 (393 SE2d 235) (1990).
[6] See id. at 364-365 (1).
[7] (Punctuation omitted.) Id. at 365.

case. They ignore the rest of the Court's decision, however, in which it concluded that, under the 1988 amendments, "the county boards of tax assessors may either *adopt* or modify the Commissioner's proposed assessment before issuing a final assessment."[8] In other words, "counties may rely entirely on the Commissioner's proposed assessment in issuing the final assessment."[9]

In this case, the uncontroverted evidence showed that the County Tax Assessors opted to adopt the Commissioner's proposed assessments, as permitted by the Supreme Court's decision in *Collins*.[10] "The object of the assessors must be to determine the fair market value of the property subject to taxation in the county and the methods employed may be varied if the object is attained."[11] The methods used by the Revenue Department, and the results adopted by the County Tax Assessors, accomplished this purpose. Though each individual utility company asset was not separately assessed under the Revenue Department's formula, the overall fair market value of each company's combined assets in the county was assessed. It follows that the superior court did not err in upholding the County Tax Assessors' right to adopt the Revenue Department's proposed assessments of the utility companies, and summary judgment was appropriate on this issue.[12]

(b) We also conclude that the superior court properly granted summary judgment to the County Tax Assessors on the Property Owners' claim that personal property and real property were not uniformly assessed because the County Tax Assessors were not properly scrutinizing personal property returns of businesses. The Property Owners argue that "[t]he bottom line is that [the County Tax Assessors] are required to utilize an investigative process to uncover all business personal property and thereafter to have a staff or a mechanism to determine its fair market value."

The Property Owners' argument places a greater burden on the County Tax Assessors than is imposed by law:

> It is the duty of the board of tax assessors to see that all taxable property within the county is assessed and returned at its just and fair valuation and that valuations as between individual taxpayers are fairly and justly equalized. This does not require the tax assessors to use any definite system or method, but demands only that the valuations be just and

---

[8] (Punctuation omitted; emphasis supplied.) Id. at 365-366.

[9] (Punctuation omitted.) Id. at 366.

[10] See id.

[11] (Punctuation omitted.) *Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726, 728 (2) (279 SE2d 223) (1981).

[12] See OCGA § 9-11-56 (c).

that they be fairly and justly equalized among the individual taxpayers according to *the best information obtainable*.[13]

Under this rule, tax assessors are

not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure.[14]

The Property Owners have not shown that the County Tax Assessors' method of assessing business personal property runs afoul of these standards. Rather, the evidence shows that the County Tax Assessors are using the best information obtainable to determine the fair market value of business personal property. The Assessors use methods mandated by the State Appraisal Manual to arrive at the fair market value of business inventory, equipment, and furniture, and the Property Owners have presented no evidence challenging the propriety of these methods.

Furthermore, the County Tax Assessors receive approximately 6,000 business personal property returns annually, yet the office responsible for processing these returns has only seven employees — a manager, one appraiser, three auditors, and two clerks. Every return is checked against the previous year's return and sometimes the returns of similar companies. If an inconsistency is found, the staff audits that return. In addition, the County Tax Assessors subject a number of returns to random audits.

Undoubtedly, there are taxpayers who fail to properly report every item of business personal property they own. But the law does not require the County Tax Assessors to implement a procedure that will reveal every such instance. To impose this standard would require the assessors to perform an impossible task.[15] They cannot possibly inventory the stock and equipment of every retailer and other business to insure that they have all reported 100 percent of their property. Thus, that level of information is not obtainable. Because the undisputed evidence shows that the County Tax Assessors are using the best information that is obtainable, the trial court

---

[13] (Punctuation omitted; emphasis supplied.) *Coastal Equities v. Chatham County Bd. of Tax Assessors,* 201 Ga. App. 571, 572 (1) (411 SE2d 540) (1991).

[14] (Punctuation omitted.) *Rogers,* supra at 729.

[15] See *Rogers,* supra.

properly granted partial summary judgment to the appellees on this claim.[16]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JULY 1, 2002 —
RECONSIDERATION DENIED JULY 23, 2002

*Burt & Burt, Hilliard P. Burt*, for appellants.
*Jenkins & Nelson, Frank E. Jenkins III, Lee & Lee, William S. Lee IV*, for appellee.

---

[16] See id.; *Coastal Equities*, supra.