## A06A1951. GEORGIA POWER COMPANY v. MONROE COUNTY et al.
### (644 SE2d 882)

ANDREWS, Presiding Judge.

This case had its genesis when Georgia Power Company ("Georgia Power") filed a 2003 ad valorem tax return, including its estimate of its operating property's fair market value, with the Commissioner of the State Board of Equalization. The State Commissioner reviewed and approved this valuation, apportioned it among the various counties in which Georgia Power owns such property, and proposed an assessment ratio. Pursuant to its power to make a "final assessment" under OCGA § 48-2-18 (d), however, the Monroe County Board of Tax Assessors ("the Monroe Board") rejected the State Commissioner's fair market valuation and raised the assessment ratio. Georgia Power then brought this action for equitable relief, and the trial court granted summary judgment to the Monroe Board. Because we find that the term "final assessment" does not include a revaluation of the fair market value of a public utility's property, we reverse.

On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998).

The relevant facts are not in dispute. In compliance with its duty under OCGA § 48-5-511 (b) to provide a sworn statement of "a just, true, and full return of the fair market value of [its] property," Georgia Power filed a 2003 property tax return with the State Board showing that its operating property had a fair market value of almost $8.8 billion. The State Board reviewed this value and then apportioned it among the 156 counties in which Georgia Power had operating properties, with Monroe County's portion amounting to nearly $229 million. Applying the 36.27 percent assessment ratio taken from the state auditor's annual Sales-Assessment Ratio Study, the State Commissioner eventually certified to the Monroe Board that Georgia Power's property in that county had been assessed at $83 million.

On the basis of its consultant's report, however, the Monroe Board raised the fair market value of Georgia Power's Monroe County property from $229 million to $701 million, and also raised the assessment ratio to 40 percent.[1] As a result, Monroe County assessed the value of Georgia Power's property at $280 million, more than three times that assessed by the State Commissioner. The

---

[1] See OCGA § 48-5-7 (a) ("Except as otherwise provided in this Code section, taxable tangible property shall be assessed at 40 percent of its fair market value.").

Monroe Board then issued 2003 tax bills to Georgia Power totaling $5.98 million, as opposed to the less than $2 million that would have been owed under either a 36 percent or a 40 percent ratio at the State Commissioner's appraised value.

Georgia Power objected on the ground that even if counties had the power to raise assessment ratios, county boards are not empowered to change the State Commissioner's determination of fair market value, which would undermine the widely accepted practice of assessing utility properties as a whole at the state level. Georgia Power then brought this action seeking to bar the Monroe Board from substituting its own fair market value for the State Commissioner's in the course of making its "final assessment." Both parties moved for summary judgment, which the trial court granted to the Monroe Board.

The Monroe Board asserts that it has the authority to reset not only the assessment ratio imposed on Georgia Power's Monroe County property, but also the fair market value of that property as appraised by the State Commissioner. In support of this assertion, the Monroe Board cites OCGA § 48-2-18 (d), which provides that "[w]ithin 30 days after receipt of the [State Commissioner's] proposed digest of assessments, *the county board of tax assessors shall make the final assessment of the property in question* and provide notice to the taxpayer." (Emphasis supplied.) We disagree.

As we have already noted, the process of taxation of a public utility begins when the utility files a sworn statement of its property's value with the State Board. Under OCGA § 48-2-18 (b), and upon the completion of a "digest of assessments proposed by the [State C]ommissioner," the State Board

> shall carefully examine the proposed assessments of each class of taxpayers or property and the digest of proposed assessments as a whole to determine that they are reasonably apportioned among the several tax jurisdictions and reasonably uniform with the values set on other classes of property throughout the state.

OCGA § 48-5-511 (c) provides that in the course of "promulgating the regulations specifying the method of apportionment" concerning the taxation of public utilities, the State Commissioner shall consider factors including those which "in [his] judgment are reasonably calculated to apportion fairly and equitably the property between the various tax jurisdictions."

In the course of construing the procedural provisions of OCGA § 48-2-18, our Supreme Court noted in *Telecom*USA v. Collins*, 260

Ga. 362 (393 SE2d 235) (1990) that "neither the method for establishing the 'final assessment' nor any possible limitations on the counties' power to modify the Commissioner's 'proposed assessment' are squarely raised in this case," and declined to reach the issue as a result. Id. at 366, n. 3. This is precisely the question before us today, however: whether the Monroe Board exceeded its authority when, in the course of making the "final assessment" of Georgia Power's property, it substituted not only its own assessment ratio but also its own fair market value for those calculated by the State Commissioner.

> We begin our analysis with the "golden rule" of statutory construction, which requires us to follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else. When literal reading of the statute produces such an absurdity, the appellate court must then seek to make sense out of the statute, while being faithful to the legislative intent. To define the legislative intent, the court considers the purpose of the statute and its impact on the body of law as a whole. The court also considers the law as it existed before the statute was passed and identifies the mischief sought to be corrected. Finally, when a taxing statute has doubtful meaning, it must be construed liberally in favor of the taxpayer and against the State.

(Citations and punctuation omitted.) *Telecom\*USA*, supra at 363-364 (1).

Monroe County argues that if the General Assembly had desired to grant to county boards *only* the power to adjust *assessment ratios*, it could have done so, as when it defined the term in 1988 amendments concerning the examination of county tax digests. See OCGA § 48-5-341 (3). The term "assessment" itself is defined nowhere in the Revenue Code, however, and is generally defined as *either* the appraisal of value or the assessment of tax. See Black's Law Dictionary, 5th ed., 1979 (defining "assessment" as "[t]he listing and valuation of property for the purpose of apportioning a tax upon it," and *"[a]lso* determining the share of a tax to be paid by each of many persons[,] *or* apportioning the entire tax to be levied among the different taxable persons, establishing the proportion due from each") (emphasis supplied). We therefore turn to other statutes "relating to the same subject matter," construing them "together to ascertain the legislative intent." *Schrenko v. DeKalb County School Dist.*, 276 Ga. 786, 790 (1) (582 SE2d 109) (2003).

In the ordinary course, county boards will have the power both to appraise value and to assess tax. See OCGA § 48-5-305 (b) (conferring on the county board the "full power and authority necessary" to assess "the fair market value of all property in the county"). In such cases, there is little reason to distinguish between the two procedures. See *Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726 (279 SE2d 223) (1981) (county board may determine fair market value of airplane by reference to either "blue book" value or depreciated value). We have also held that a county board cannot be compelled to devote its own resources to a new and independent determination of the value of a public utility's property. See *Burt, Burt & Rentz Retirement Pension Trust v. Dougherty County Tax Assessors*, 256 Ga. App. 648, 650-652 (2) (a), (b) (569 SE2d 557) (2002).

It does not follow, however, that a county board's power to make a "final assessment" includes that of reassessing "fair market value" as to taxpayers who must file returns with the State Commissioner. The very statute on which the Monroe Board relies, OCGA § 48-5-341 (3), provides that " '[a]ssessment ratio' means the fractional relationship the assessed value of property bears to the fair market value of the property" — suggesting that the act of assessment is neither more nor less than the application of a ratio to a *given* fair market value. Likewise, when it sets out the various duties of the county boards of tax assessors, OCGA § 48-5-263 (b) indicates that the appraisal of fair market value is only the first step in a lengthy process of assessment:

> Each member of the county property appraisal staff shall: (1) *[m]ake appraisals of the fair market value* of all taxable property in the county *other than property returned directly to the commissioner;* . . . (3) *[p]repare annual assessments* on all taxable property appraised in the county and submit the assessments for approval to the county board of tax assessors; . . . [and] (6) [a]ttend hearings of the county board of equalization and provide information to the board regarding the *valuation and assessments* approved by the county board of tax assessors. . . .

(Emphasis supplied.) Finally, and most important, that part of the Revenue Code concerning the powers of county boards specifies that *"[n]othing contained in this part shall apply to those persons who are required to make their returns to the [C]ommissioner."* (Emphasis supplied.) OCGA § 48-5-313; see also *Pullman Co. v. Suttles*, 187 Ga. 217, 222-223 (5), (6) (199 SE 821) (1938) (a county board's assertion of its powers over a railroad required to make tax returns to the State deprived the railroad of due process of law).

We conclude that because a county board's "final assessment" under OCGA § 48-2-18 cannot include a reappraisal of the fair market value of any taxpayer, including a public utility, required to make a return to the State, the trial court erred when it denied Georgia Power's motion for summary judgment. We therefore reverse the judgment of the trial court and remand the case with direction to issue an injunction barring the Monroe Board from collecting taxes on Georgia Power's Monroe County property based on the Monroe Board's reappraisal of that property's fair market value.

*Judgment reversed and case remanded with direction. Johnson, P. J., Miller, Ellington and Mikell, JJ., concur. Adams, J., concurs specially. Barnes, C. J., dissents.*

ADAMS, Judge, concurring specially.

I concur in the majority decision. According to the Supreme Court of Georgia, OCGA § 48-2-18 (d) gave counties "a new role in the taxation of utilities." *Telecom\*USA v. Collins*, 260 Ga. 362, 365 (1) (393 SE2d 235) (1990). "The essence of the counties' new role is the right to make an assessment that is different from the Commissioner's 'proposed assessment' and to deal with appeals from its 'final assessment.' " Id. Thus, the court concluded that counties had the right to either adopt the Tax Commissioner's proposed assessment of utility property or to modify it before issuing a final assessment. Id. at 365-366. But neither the *Telecom\*USA* opinion nor the statute defines the extent of the county's power to modify the Commissioner's proposed assessment. Id. at 366, n. 3.

This ambiguity inherent in OCGA § 48-2-18 (d) cries out for legislative explanation. But in the absence of such clarification we must review that statute in the context of the current statutory scheme for the imposition of county ad valorem taxes. From that review, it appears that the legislature intended that the valuation of utility properties should occur at the state level, and not on a county-by-county basis. See OCGA §§ 48-5-263 (b) (excluding the valuation of such property from the duties of county tax appraisers); 48-5-305 (excluding such property from county's right to value property not appearing in the county tax digest). See also OCGA § 48-5-313 (providing that part of the Code dealing with county boards of tax assessors has no application to such property). Accordingly, I agree with the majority's conclusion that under the current legislation a county may not reappraise the fair market value of the property.

BARNES, Chief Judge, dissenting.

Because I cannot agree that this court is authorized to interpret OCGA § 48-2-18 (d) so as to defeat that Code section's plain terms, I must respectfully dissent. OCGA § 48-2-18 provides in its entirety:

(a) There is established a board composed of the commissioner, the state auditor, and the executive director of the State Properties Commission.

(b) The board created by this Code section shall be designated the State Board of Equalization. The chairman and administrative officer of the board shall be the commissioner. Each year, when the digest of assessments proposed by the commissioner is complete, the commissioner shall submit the digest to the State Board of Equalization which shall carefully examine the *proposed* assessments of each class of taxpayers or property and the digest of *proposed* assessments as a whole to determine that they are reasonably apportioned among the several tax jurisdictions and reasonably uniform with the values set on other classes of property throughout the state. If the board determines that the *proposed* assessed values of any one or more of the classes of taxpayers or property or the digest as a whole does not reasonably conform to the values set for other property throughout the state, it shall inquire as to the reason for the lack of conformity and shall adjust and equalize the same by either adding or subtracting a fixed percentage to the class of taxpayer, to the class of property, or to the digest as a whole, as the case may be.

(c) As chairman and chief administrative officer of the board, the commissioner shall furnish to the board all necessary records and files and in this capacity may compel the attendance of witnesses and the production of books and records or other documents as he is empowered to do in the administration of the tax laws. After final approval by the State Board of Equalization of the digest of *proposed* assessments made by the commissioner and after any adjustments by the board as authorized by this Code section are made, the commissioner shall notify within 30 days each taxpayer in writing of the *proposed* assessment of its property. At the same time, the commissioner shall notify in writing the board of tax assessors of such county, as outlined in Code Section 48-5-511, of the total *proposed* assessment of the property located within the county of taxpayers who are required to return their property to the commission. If any such taxpayer notifies the commissioner and the board of tax assessors in any such county of its intent to dispute a portion of the *proposed* assessment within 20 days after receipt of the notice, the county board of tax assessors shall include in the county digest only the undisputed amount of the assessment, and the taxpayer may challenge the commissioner's

*proposed* assessment in an appeal filed in the Superior Court of Fulton County within 30 days of receipt of the notice. In any such appeal the taxpayer shall have the right of discovery as provided in Chapter 11 of Title 9, the "Georgia Civil Practice Act." Upon conclusion of the appeal, the taxpayer shall remit to the appropriate counties any additional taxes owed, with interest at the rate provided by law for judgments. Such interest shall accrue from the date the taxes would have been due absent the appeal to the date the additional taxes are remitted.

(d) Within 30 days after receipt of the *proposed* digest of assessments, the county board of tax assessors shall make the final assessment of the property in question and provide notice to the taxpayer. Such notice and any appeal therefrom shall be accomplished as is provided by Code Sections 48-5-306 and 48-5-311. In the event of an appeal, the department shall, upon request of the local board of tax assessors and without any charge or cost therefor, provide the local board of tax assessors with any and all technical assistance available from the resources of the department, including without limitation expert testimony by the employees of the department.

(e) Assessments made in accordance with subsection (d) of this Code section shall be added to the regular county digest at the time the digest is transmitted to the commissioner or at such time as the digest is otherwise required to be compiled.

(f) The notice and appeal procedures provided for in this Code section shall not apply to any decision of the board relating to the assessed value of motor vehicle property.

(g) The provisions of this Code section shall not apply with respect to appeals which are within the jurisdiction of the Ad Valorem Assessment Review Commission.

(Emphasis supplied.)

Even though interpretation is not authorized because the words of the Code section "are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results," *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999), the majority has interpreted this Code section to eliminate from the text of the Code section each use of the word "proposed" and replaced it with the word "final." Additionally, the majority's interpretation would make meaningless that part of OCGA § 48-2-18 (d) that states, "the county board of tax assessors shall make the *final* assessment of the property

in question and provide notice to the taxpayer." (Emphasis supplied.) This is a result our law does not permit.

Further, the majority's reading of the Code section was rejected by our Supreme Court in *Telecom*USA v. Collins*, 260 Ga. 362, 364 (1) (393 SE2d 235) (1990), in which the "utilities argue that 'proposed assessment' and the 'final assessment' are the same. Thus, they say, the appeals from each of these assessments would necessarily involve the same issues." Id. The Supreme Court went on to say that,

> The stated purpose of the 1988 amendment to OCGA § 48-2-18 was to extensively revise provisions relating to ad valorem taxation of public utilities; *to provide for local assessment*; to provide for state assistance in the event of appeals; to *change the method of assessment* of public utilities; to revise the duties and responsibilities of the State Board of Equalization.

> (Emphasis supplied.) Ga. L. 1988, p. 1568. The changes in the statute can best be understood as they stand in contrast to the former version of the statute. The 1988 amendments to Title 48 left intact the old provisions relating to the "unit tax" method for public utilities. See OCGA § 48-5-511. The amendments did not relieve the Commissioner and the Board of their responsibility to make an assessment of all the utility's taxable assets in the State as a unit and apportion it among the counties. Compare OCGA § 48-2-18 (b) and (c) as enacted by Ga. L. 1978, p. 309, § 2, and OCGA § 48-2-18 (b) and (c) as enacted by Ga. L. 1988, p. 1568, § 1. The real "change in the method of assessment" is found in OCGA § 48-2-18 (d), in which the counties are given thirty days after the receipt of the proposed digest to make a "final assessment" and provide notice to the taxpayer. We find no statutory mention of the county's right to make a "final assessment" before the 1988 amendments. We note also that the legislature described assessment issued by the Commissioner as a "proposed assessment" and the assessment by the county board of tax assessors as the "final assessment." *Thus, the plain language of the statute, its caption, and its history, all indicate that the legislature intended for the counties to play a new role in the taxation of utilities. The essence of the counties' new role is the right to make an assessment that is different from the Commissioner's "proposed assessment" and to deal with appeals from its final assessment.*

(Emphasis supplied.) Id. at 364-365.

The Supreme Court further held that

> [t]he legislative history of the statute also supports this construction. The House Bill which became the existing statute was reported out of the House Ways and Means Committee by substitute without any provision for an appeal from the Board's "proposed assessment." H.B. 337, Ga. House Journal, 1988 Reg. Sess., p. 1330. It made provision, however, for appeals of the county boards in the counties in which the "final assessments" were made. Id. at 1332. The portion of the statute dealing with an appeal from the Board's action was inserted as a floor amendment. Id. at 1338. Without that amendment, all appeals would have been from the assessment of the county boards. Additional evidence of the intent of the legislature is contained in the fiscal note provided to the House Ways and Means Committee by the State auditor and the Office of Planning and Budget which describes the bill as one providing for the property of utilities to be "assessed by local taxing jurisdictions (cities, counties and school districts) instead of the Department of Revenue." Ga. Senate Journal, 1988 Reg. Sess., p. 2099. The fiscal note also recites, "the Department would still be involved in developing proposed assessments; however, the final assessment and collection of the tax would be the responsibility of the local tax jurisdiction. The Bill would also eliminate provisions requiring the State Board of Equalization to hear appeals involving certain tax assessment disputes."

*Telecom\*USA v. Collins*, supra, 260 Ga. at 365.

Thus, the court concluded that "the county boards of tax assessors may either adopt or modify the Commissioner's 'proposed assessment' before issuing a 'final assessment.'" *Telecom\*USA v. Collins*, supra, 260 Ga. at 365-366. As the majority states, the Supreme Court did not decide specifically whether a county may appropriately modify only the assessment ratio before issuing a final assessment, id. at 366, but given its discussion of the legislative history, the answer to that question is clear.

The majority's decision that a county may only modify the assessment ratio is contrary to the plain language of OCGA § 48-2-18 (d), and courts cannot interpret the plain language of a Code section unless following its plain language would lead to absurd, impractical,

or contradictory results. *Busch v. State*, supra, 271 Ga. at 592. That result would not follow from applying the literal language of OCGA § 48-2-18 (d).

Additionally, the authorities relied upon by the majority do not lead to the result reached. Although the duties of the appraisers set forth in OCGA § 48-5-263 (b) do not require appraisers to appraise the fair market value property returned directly to the commissioner, the section does not prohibit appraisers from doing so. Also, the majority's reliance on the statement in OCGA § 48-5-313 that "[n]othing contained in this part shall apply to those persons who are required to make their returns to the commissioner," is misplaced because OCGA § 48-2-18 (d) is not found in the part of the Code to which OCGA § 48-5-313 refers. Further, *Pullman Co. v. Suttles*, 187 Ga. 217 (199 SE 821) (1938), was decided before the changes to OCGA § 48-2-18 discussed above in *Telecom\*USA v. Collins*, supra, 260 Ga. at 364-366. Therefore, nothing before us leads to the conclusion that the local assessors are limited to the appraised value determined by the Commissioner.

In any event, the majority's interpretation is contrary to the holding reached in *Telecom\*USA v. Collins*, supra, 260 Ga. at 365:

> Thus, the plain language of the statute, its caption, and its history, all indicate that the legislature intended for the counties to play a new role in the taxation of utilities. The essence of the counties' new role is the right to make an assessment that is different from the Commissioner's "proposed assessment" and to deal with appeals from its "final assessment."

Accordingly, as I would affirm the judgment of the trial court, I must respectfully dissent.

DECIDED MARCH 30, 2007 —

*Haygood, Lynch, Harris, Melton & Watson, Charles B. Haygood, Jr., McNatt & Greene, Hugh B. McNatt, Troutman Sanders, Norman L. Underwood, T. Jerry Jackson, Kevin G. Meeks, Roger S. Reigner, Jr.,* for appellant.

*Bullard, Garcia & Wangerin, Kevin A. Wangerin,* for appellees.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General, King & Spalding, Nolan C. Leake, Ranse M. Partin, Alston & Byrd, Mary T. Benton, Timothy J. Peaden, Baker, Donelson, Bearman,*

*Caldwell & Berkowitz, L. Clint Crosby, Sutherland, Asbill & Brennan, James A. Orr, W. Scott Wright, Chilivis, Cochran, Larkins & Bever, John K. Larkins, Jr., Meredith E. Mays, Richard W. Bell,* amici curiae.

