S07G1156. MONROE COUNTY et al. v. GEORGIA POWER COMPANY.

(655 SE2d 817)

MELTON, Justice.

In accordance with OCGA § 48-5-511 (a) and (b), Georgia Power Company provided a 2003 return to the State Revenue Commissioner (Commissioner) and the State Board of Equalization (State Board) showing approximately $8.8 billion as the fair market value of all of its real property holdings in the State of Georgia. After reviewing the return, the Commissioner approved this fair market value and apportioned it among the numerous counties of the state in which Georgia Power held real property. The apportioned value of real property held by Georgia Power in Monroe County was calculated to be approximately $229 million. The Commissioner then multiplied this apportioned value by a 36.27% assessment ratio, resulting in an assessment value of Georgia Power's Monroe County property of approximately $83 million. Based on these calculations, the Commissioner arrived at a proposed tax assessment of the Monroe County property equal to approximately $2 million.

After being notified of the Commissioner's proposed assessment, the Monroe County Board of Tax Assessors (Monroe County Board) decided to reject both the Commissioner's determination of fair market value for the property as well as the 36.27% assessment ratio which had been used. Instead, the Monroe County Board determined that Georgia Power's property had a fair market value of $701 million, and it increased the assessment ratio to 40%. These altered

figures resulted in a final tax assessment of approximately $5.98 million, rather than the $2 million tax proposed by the Commissioner.

Georgia Power objected to the Monroe County Board's calculations, and brought an action for equitable relief. The trial court rejected Georgia Power's arguments and entered summary judgment in favor of the Monroe County Board. Georgia Power appealed this decision, and, in *Ga. Power Co. v. Monroe County*, 284 Ga. App. 707 (644 SE2d 882) (2007), the Court of Appeals held that, although the Monroe County Board had the authority to alter the assessment ratio proposed by the Commissioner, it lacked the authority to alter the apportioned fair market value for the property used by the Commissioner in his proposed assessment. We granted certiorari to determine the propriety of this holding. For the reasons set forth below, we affirm.

In its most general sense, the calculation of the taxable value of property for ad valorem tax purposes requires the multiplication of two factors: the fair market value of a particular piece of property and an assessment ratio. The former quantity represents the amount at which the property would fairly sell for in an arms length transaction, and the latter factor is expressed as a percentage representing the ratio of the assessed value to the fair market value of the property. The manner in which these factors are quantified is set forth in the ad valorem tax provisions of our state revenue code.

Of particular importance in this case is OCGA § 48-2-18, which was passed as part of a set of 1988 amendments intended to modify the procedures relating to ad valorem taxation in Georgia. OCGA § 48-2-18 (c) states:

> After final approval by the State Board of Equalization of the digest of proposed assessments made by the [C]ommissioner and after any adjustments by the [State B]oard as authorized by this Code section are made, the [C]ommissioner shall notify within 30 days each taxpayer in writing of the proposed assessment of [the] property.

In turn, OCGA § 48-2-18 (d) provides that "[w]ithin 30 days after receipt of the [Commissioner's] proposed digest of assessments, the county board of tax assessors shall make the final assessment of the property in question and provide notice to the taxpayer."

Monroe County contends that, by authorizing counties to calculate a "final assessment" for property under OCGA § 48-2-18 (d), the legislature intended to give counties complete control over ad valorem taxation, including the right to reject both the fair market value and assessment ratio determined by the Commissioner in his "proposed assessment" under OCGA § 48-2-18 (c). Georgia Power, on the

other hand, argues that, in order to preserve Georgia's longstanding employment of a "unit tax" method for taxation of public utilities, counties may alter the Commissioner's assessment ratio in making a final assessment, but not the fair market value. A review of both the revenue code as a whole and existing case law supports Georgia Power's contentions.

When filing an ad valorem tax return, each individual public utility is required to report the full fair market value of all of its property located within the state and to apportion the value of that property among the various counties in which parcels of this property are located according to apportionment rules and regulations promulgated by the Commissioner. OCGA § 48-5-511 (c) (1). The Commissioner is given the authority to promulgate these apportionment rules so that, among other things, he may include within them "factors which in the [C]ommissioner's judgment are reasonably calculated to apportion fairly and equitably the property between the various tax jurisdictions." OCGA § 48-5-511 (c) (2) (F).

This system of apportionment by the Commissioner is in accord with the use of a unit tax method in Georgia for taxing property of public utilities. Under this method, the overall value of a public utility's property held within the state is determined as a whole and then divided among the counties in which the property is located in proportion to the percentage of the overall property located in that county. This system is intended to create the most equitable result for all parties involved. The unit tax provides the public utility with a certain total amount of taxable value determined by a central state figure, and it also provides the interested counties with the assurance that each will receive given proportionate shares of that total based on the amount of property situated in each county.

Although the ad valorem tax structure was altered in 1988, the unit tax method for taxation of public utilities was retained.

> The 1988 amendments to Title 48 left intact the old provisions relating to the "unit tax" method for public utilities. See OCGA § 48-5-511. The amendments did not relieve the Commissioner and the Board of their responsibility to make an assessment of all the utility's taxable assets in the State as a unit and apportion it among the counties.

(Citations omitted.) *Telecom*USA, Inc. v. Collins*, 260 Ga. 362, 364-365 (1) (393 SE2d 235) (1990).

Therefore, in construing OCGA § 48-2-18, we must be mindful of this unit tax overlay to the ad valorem tax structure while also taking into consideration that, under the 1988 amendments, "[t]he essence of the counties' new role is the right to make an assessment that is

different from the Commissioner's 'proposed assessment' and to deal with appeals from its 'final assessment.' "[1] Id. at 365 (1). To preserve the efficacy of the unit tax, determination of overall value and apportionment by a central state party like the Commissioner must continue, and, to increase a county's role in determining ad valorem tax, a county must have some ability to modify the proposed assessment of the Commissioner in determining a final assessment. Both of these objectives are achieved by allowing the Commissioner to control the determination of fair market value and its apportionment and allowing each county to determine the appropriate assessment ratio to be applied based on the most recent records uniquely available to each county.

This result is also consistent with our discussions of ad valorem taxation in *Telecom*, supra. There, we concluded

> that the county boards of tax assessors may either adopt or modify the Commissioner's proposed assessment before issuing a final assessment. . . . If the county has modified the proposed assessment, then the county must have had access to information that is either more current or more credible regarding the appropriate assessment amount.

(Punctuation and footnote omitted.) Id. at 365-366. In other words, following the Commissioner's determination of assessment ratios, a county may revalue locally appraised properties, altering the assessment ratio to be applied to them. In turn, this would affect the appropriate assessment ratio to be applied to public utilities within the county, as the Georgia Constitution requires that locally appraised property and public utility property be uniformly taxed. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III (f). If a county has this type of "more current information" regarding locally appraised property, the county may determine that it is necessary to alter the assessment ratio proposed by the Commissioner.

Finally, the revenue code implies that, contrary to Monroe County's position, counties are not meant to have ultimate control over ad valorem taxation of public utilities. To the contrary, several statutory provisions indicate that counties may not set values for public utility property. See OCGA §§ 48-5-263 (b) (1) (stating that county tax appraisers may make fair market value appraisals except for property returned directly to the Commissioner); 48-5-264.1 (providing

---

[1] The 1988 amendments were intended "to extensively revise provisions relating to ad valorem taxation of public utilities; to provide for local assessment; to provide for state assistance in the event of appeals; to change the method of assessment of public utilities; to revise the duties and responsibilities of the State Board of Equalization. . . ." Ga. L. 1988, p. 1568.

that the chief appraiser and local assessors may go upon property to make value appraisals other than property directly returned to the Commissioner); 48-5-305 (c) (allowing local assessors to ascertain the fair market value of any property not already appearing on the county digest except for property returned to the Commissioner); and 48-5-313 (stating that no part of the Revenue Code setting forth the powers of local assessors shall apply to those persons required to file returns directly with the Commissioner). Three of these statutes were expressly retained in the 1988 amendment and one was enacted three years later, thereby showing that the legislature intended to retain valuation of public utility property at the state level.

Therefore, in accordance with our prior case law, legislative intent, and the revenue code, we find that, in reaching a final assessment pursuant to OCGA § 48-2-18 (d), a county may alter the assessment ratio used by the Commissioner in his proposed assessment, but the county does not have authority to alter the apportioned fair market value determined by the Commissioner.

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs specially.*

CARLEY, Justice, concurring specially.

I agree with the majority's conclusion that the Court of Appeals reached the correct result in *Georgia Power Company v. Monroe County*, 284 Ga. App. 707 (644 SE2d 882) (2007), and, therefore, I concur in our affirmance of the judgment of that Court. However, as Chief Judge Barnes noted in her articulate dissent in the Court of Appeals, both OCGA § 48-2-18 and our decision in *Telecom\*USA, Inc. v. Collins*, 260 Ga. 362 (393 SE2d 235) (1990), can be read to support a construction contrary to that reached in this case by the majority in both this Court and the Court of Appeals. *Georgia Power Company v. Monroe County*, supra, 711 (Barnes, C. J., dissenting). Nevertheless, I can concur in the majority's conclusion because of a footnote in Chief Justice Clarke's opinion in *Telecom\**:

> Some of the documents submitted by the counties or by the Board imply that the counties may appropriately modify only the "assessment ratio" before issuing a final assessment. However, neither the method for establishing the "final assessment" nor any possible limitations on the counties' power to modify the Commissioner's "proposed assessment" are squarely raised in this case. *We do not reach these issues here.* (Emphasis supplied.)

*Telecom\**, supra, 366, fn. 3. Because this Court specifically did not decide this issue in *Telecom\**, the majority's resolution thereof in this

case is appropriate, logical, and consistent with the "unit tax" method of assessment for public utilities.

DECIDED JANUARY 8, 2008.

*Bullard & Wangerin, Kevin A. Wangerin,* for appellants.
*Troutman Sanders, Norman L. Underwood, T. Jerry Jackson, Roger S. Reigner, Jr., Kevin G. Meeks, Haygood, Lynch, Harris, Melton & Watson, Charles B. Haygood, Jr.,* for appellee.
*King & Spalding, Ranse M. Partin, Nolan C. Leake, Chilivis, Cochran, Larkins & Bever, John K. Larkins, Jr., Sutherland, Asbill & Brennan, James A. Orr, W. Scott Wright, Baker, Donelson, Bearman & Caldwell, L. Clint Crosby, Richard W. Bell, Alston & Bird, Mary T. Benton, Timothy J. Peaden, Meredith E. Mays, Thurbert E. Baker, Attorney General, Warren R. Calvert, Senior Assistant Attorney General,* amici curiae.